COMMONWEALTH vs. DAVID K. SHEPPARD.

Suffolk. February 8, 1989. — May 1, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Assault and Battery. Practice, Criminal,* Required finding, Argument by prosecutor, Instructions to jury. *Robbery.*

Where there was evidence at a criminal trial that the victim was punched in the face with sufficient force to cause his head to strike the pavement, resulting in his death from a hemorrhage caused by a severe fracture of the skull; that the assailant was far superior in size to the victim; and that the defendant called the blow a "knockout punch," and where the judge instructed the jury that they must find that the Commonwealth proved that the defendant punched the victim and that the punching was harmful, the jury's finding of an intentional battery done "with such violence that harm [was] likely to result" was a sufficient basis to support the defendant's conviction of involuntary manslaughter. [775-777]

At the trial of a defendant charged with unarmed robbery, the evidence, together with reasonable inferences therefrom, was sufficient to warrant the denial of the defendant's motion for a required finding of not guilty. [777-778]

At a criminal trial in which the defendant objected to the prosecution's argument that its principal witness "stayed with the case" and had "been through the wringer," which the defendant alleged led the jury to believe erroneously that the witness was testifying voluntarily when in fact every prosecution witness testified under compulsion of process, there was no error in the judge's denying the defendant's motion for a mistrial; nor was there an abuse of discretion in the judge's refusing to give the requested instruction that the witness had no choice but to appear in court. [779]

INDICTMENTS found and returned in the Superior Court Department on August 6, 1986, and October 20, 1986, respectively.

The cases were tried before *Sandra L. Hamlin,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brownlow M. Speer,* Committee for Public Counsel Services (*Stephanie Page,* Committee for Public Counsel Services, with him) for the defendant.

*Laura Callahan Burnham*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, David K. Sheppard, was convicted of involuntary manslaughter and unarmed robbery. We learn from a special verdict that the finding of involuntary manslaughter was based on assault and battery and not wanton or reckless conduct. The defendant appealed, and we transferred the case here on our own motion.

The defendant challenges his convictions on several grounds. He argues that (1) since the jury explicitly rejected the wanton or reckless theory of involuntary manslaughter, his conviction must be reversed; (2) there was no evidence warranting the inference that the defendant took property by "force and violence" and therefore the unarmed robbery conviction must be reduced to larceny; and (3) a portion of the prosecutor's closing argument improperly led the jury to believe the Commonwealth's principal witness testified of his own will, and therefore a new trial must be granted. We reject each of the defendant's arguments and affirm the convictions.

From the evidence the jury could have found the following facts. On June 16, 1986, Shane Hamilton approached the defendant and tried to sell him some T-shirts. The defendant told him he would not pay for them. The defendant then took about fifteen of the shirts from the pile and pushed Hamilton back, making him move off balance. The defendant refused to pay for the shirts and walked away. The defendant admitted taking the T-shirts, but denied that he pushed Hamilton in any way.

Later that evening, Hamilton and his friend, Mark Larrier, encountered the defendant wearing one of the stolen T-shirts. A confrontation occurred in the course of which the defendant hit Larrier in the face, causing him to fall backward and hit his head. Larrier died four days later as a result of a hemorrhage caused by a severe fracture to the skull.

1. *Involuntary manslaughter*. The defendant argues that he cannot be convicted of involuntary manslaughter unless the Commonwealth proves "wanton or reckless" conduct on his part. Conversely, the Commonwealth relies on our long-standing rule that an assault and battery causing a death is sufficient to support a conviction for involuntary manslaughter.

Involuntary manslaughter is "an unlawful homicide, unintentionally caused (1) in the commission of an unlawful act, malum in se, not amounting to a felony nor likely to endanger life . . . or (2) by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct" (citations omitted). *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967). We have consistently held that "[a] battery that causes death is manslaughter." *Commonwealth* v. *Bianco*, 388 Mass. 358, 362 (1983). See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 703 (1975), cert. denied, 425 U.S. 959 (1976); *Commonwealth* v. *Campbell*, *supra*; *Commonwealth* v. *Sostilio*, 325 Mass. 143, 145 (1949); *Commonwealth* v. *Gricus*, 317 Mass. 403, 404 (1944); *Commonwealth* v. *Welansky*, 316 Mass. 383, 401 (1944). An assault and battery is "the intentional and unjustified use of force upon the person of another, however slight." *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931).

The defendant mistakenly contends that the Commonwealth's reliance on the "battery causing a death" theory of involuntary manslaughter as a basis for his conviction is invalid because of our decision in *Commonwealth* v. *Matchett*, 386 Mass. 492 (1982).[1] In the *Matchett* case, we held that the defendant's conviction of murder in the second degree, based on the felony-murder rule, could not stand because the jury were instructed that they could convict the defendant if they simply found that a death resulted from his attempted extortion. *Id.* at 501-502 n.11, 508. There we stated that a jury must

---

[1] The defendant also argues that, from our decision in *Commonwealth* v. *Welansky*, 316 Mass. 383 (1944), it should follow logically that a "battery," to be the basis of a conviction of involuntary manslaughter, must first be found to have amounted to "wanton or reckless conduct." We cannot agree. In the *Welansky* case, we held that "[w]anton or reckless conduct is the legal equivalent of intentional conduct. . . . If by wanton or reckless conduct bodily injury is caused to another, the person guilty of such conduct is guilty of assault and battery. . . . And since manslaughter is simply a battery that causes death . . . if death results, he is guilty of manslaughter. . . ." (Citations omitted.) *Id.* at 402. Thus, we simply held that wanton or reckless conduct may substitute for the intentional conduct element of a battery. The *Welansky* case should not be read as always requiring a showing of wanton or reckless conduct in order to sustain a manslaughter conviction.

find "that the extortion involved circumstances demonstrating the defendant's conscious disregard of the risk to human life," because "[t]he crime of extortion may be committed in a way not inherently dangerous to human life." *Id.* at 508.

Here the judge instructed, "you [must] find that the Commonwealth ha[s] proved [that] the defendant punched the victim. Further, there would have to be proof . . . this punching, was harmful. A harmful battery occurs when the touching is done with such violence that harm is likely to result." Given this instruction, the fact that the defendant was six feet tall and weighed 185 pounds while the victim was only five feet seven inches tall and weighed 125 pounds, the fact that the punch was of sufficient force to cause the victim's head to hit the street and cause a severe skull fracture and brain hemorrhage, and the evidence that the defendant called the blow a "knockout punch," the jury's finding of an intentional battery done "with such violence that harm [was] likely to result." was a sufficient basis to support the manslaughter conviction.

2. *Unarmed robbery.* The defendant was charged with unarmed robbery in violation of G. L. c. 265, § 19 (*b*) (1986 ed.).[2] At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty, arguing that there was no evidence that the taking was accomplished by force. The judge denied the motion. "In reviewing the denial of a motion for directed verdict in a criminal case, we determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence

[2] General Laws c. 265, § 19 (*b*), provides: "Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years."

General Laws c. 277, § 39 (1986 ed.), defines "[r]obbery" as "the taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with the intent to steal."

of every element of the crime charged." *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979), and cases cited. Further, if the evidence permits conflicting inferences, "it is for the jury to determine where the truth lies." *Commonwealth* v. *Amazeen*, 375 Mass. 73, 81 (1978).

Of course, "[t]he exertion of force, actual or constructive, remains the principal distinguishing characteristic" between a robbery and the underlying larceny. *Commonwealth* v. *Jones*, 362 Mass. 83, 86 (1972). Also, where force is used, "the degree of force is immaterial so long as it is sufficient to obtain the victim's property 'against his will.' " *Id.* at 87. Hamilton testified that the defendant "took [the T-shirts] from my left arm and he pushed me back forward a little bit." Hamilton also testified that the defendant's push "made me move off balance" and "I fell back a little bit . . . ." Hamilton's testimony warranted the finding that the taking was "against his will" and that the defendant used at least some force to facilitate the larceny.

The defendant argues that, because the alleged pushing must have followed the taking, there is no causal connection between the defendant's use of violence and his acquisition of Hamilton's property. Even if the jury believed that the defendant pushed Hamilton immediately after the defendant actually took the shirts, the jury were free to draw the reasonable inference that the defendant used the force to facilitate the larceny. See *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. 93, 94-95 (1986). The judge clearly instructed the jury that the defendant's use of force had to be causally connected to the taking.[3] It was for the jury to assess the evidence of force and to determine whether the evidence satisfied this element of the offense. There was no error in the judge's denial of the defendant's motion for a required finding of not guilty.

---

[3] The judge instructed the jury: "There has to be a causal connection between the defendant's alleged acts of force and violence and his obtaining of [Hamilton's] property. In other words, the use of such force and violence must be the cause of the defendant's obtaining [Hamilton's] property and [Hamilton] must be aware of the application of such force."

3. *The prosecutor's closing argument.* The defendant objected to the prosecutor's argument that its principal witness, Hamilton, "stayed with the case" and had "been through the wringer."[4] The defendant claims that this argument led the jury to believe erroneously that Hamilton was testifying voluntarily when in fact every prosecution witness testifies under compulsion of process of the Commonwealth.[5] The judge denied the defendant's motion for a mistrial and also refused to give a curative instruction. However, the judge did instruct the jury that they were "the sole judges" of credibility and that arguments by counsel are not evidence.

The prosecutor was responding to the defendant's attack on Hamilton's credibility by suggesting to the jury the reason there was so much previous testimony. See note 4, *supra.* The prosecutor did not state that Hamilton could have dropped the complaint. Contrast *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 12 (1980). However, even if the jury could have inferred from the prosecutor's remarks that Hamilton's testimony was voluntary, there was no indication that Hamilton did not testify voluntarily. Neither did the judge abuse her discretion in refusing to give the requested instruction that Hamilton had no choice but to appear in court. On such a collateral issue and in light of a judge's broad discretion in giving jury instructions, *Commonwealth* v. *MacDonald*, 371 Mass. 600, 603 (1976), there was no error.

*Judgments affirmed.*

---

[4] In his closing argument the prosecutor argued the credibility of Shane Hamilton, the Commonwealth's principal witness, by telling the jury: "He's a hard working, good kid and I suggest to you that you can put your confidence and faith in his testimony. He has put his faith in the system. You heard about him giving a tape recorded statement to the police. He testified in Dorchester Court to the manslaughter. He testified in the Grand Jury to the manslaughter. He testified in Roxbury Court to the robbery. He testified before the Grand Jury in the robbery. He's been through the wringer. . . . You saw him on cross examination here, I suggest a grueling cross examination. There was reference to his past testimony. There were five sets of past statements or testimony that the defense had. That's because he stayed with the case. He stayed within the system."

[5] See Mass. R. Crim. P. 17 (e), 378 Mass. 885 (1979).