. Commonwealth *vs.* Francis J. Auditore.

Essex. March 5, 1990. - July 3, 1990.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Greaney, JJ.

*Homicide. Wanton or Reckless Conduct. Controlled Substances. Grand
Jury. Proximate Cause.*

Evidence presented to a grand jury that the defendant feloniously distrib-
    uted heroin to a person who then died as a result of injecting the drug
    was sufficient to support an indictment for involuntary manslaughter
    under the theory stated in *Commonwealth* v. *Welansky*, 316 Mass. 383
    (1944). [795-797]

Indictment found and returned in the Superior Court De-
partment on March 2, 1988.

A motion to dismiss was heard by *Peter F. Brady*, J., and
the case was reported by him to the Appeals Court. The Su-
preme Judicial Court granted a request for direct review.

*S. Jane Haggerty*, Assistant District Attorney, for the
Commonwealth.

*Christopher S. Skinne*r for the defendant.

Greaney, J. The defendant in this case, like the defendant
in *Commonwealth* v. *Catalina, ante* 779 (1990), was indicted
for involuntary manslaughter under G. L. c. 265, § 13 (1988
ed.), predicated on his alleged unlawful distribution of heroin
to the victim in violation of G. L. c. 94C, § 32 (1988 ed.).
After denying the defendant's motion to dismiss the man-
slaughter indictment,[1] the same judge involved in the *Cata-
lina* case reported the same two questions for determination
by the Appeals Court. Those questions once again are:

---

[1] In denying the motion to dismiss, the judge noted his "opinion that the
only theory under which the crime can be charged is under *Common-
wealth* v. *Welansky*, 316 Mass. 383, 399 [1944]."

1. "Was the evidence presented to the Grand Jury suffi-
cient to support an indictment for manslaughter under
the principle of 'unlawful-act manslaughter?' "

2. "Was the evidence presented to the Grand Jury suffi-
cient to support an indictment for manslaughter under
the principles of *Commonwealth* v. *Welansky*, 316
Mass. 383 (1944) (wanton and reckless conduct)?"

We allowed a joint application for direct appellate review.
As we did in the *Catalina* case, *supra*, we conclude that the
defendant cannot be charged on the theory of unlawful-act
manslaughter, but that the evidence before the grand jury is
sufficient to support his prosecution under *Commonwealth* v.
*Welansky*, *supra*.

The evidence presented to the grand jury, viewed in the
light most favorable to the Commonwealth, indicated the fol-
lowing. On the evening of January 28, 1988, Anne Marie
Swanson spoke to the defendant by telephone about purchas-
ing heroin. After that conversation, Swanson left her apart-
ment in Gloucester and went to a "sub shop" to purchase the
drug. At the sub shop, the defendant sold Swanson two bags
of "Power 95" heroin.

Swanson returned to her apartment, proceeded to "cook up
the heroin" in the kitchen, and then went into the bathroom.
After she entered the bathroom, a friend who was present in
the apartment heard Swanson say that the heroin was power-
ful. A couple of minutes later the friend heard a crash. He
rushed into the bathroom and found Swanson "crumpled on
the floor next to the sink." He saw a hypodermic needle on
the table. He tried unsuccessfully to revive Swanson; there
was neither blood pressure nor pulse.

The police were called to the scene and they too were una-
ble to detect any vital signs on the victim, who was sprawled
on the bathroom floor. The police observed a needle and syr-
inge in the bathroom. In the kitchen, they retrieved a bag
stamped "Power 95," as well as a "cooker spoon" for dilut-
ing heroin. They also retrieved an empty glassine bag

stamped "Power 95" from a trash receptacle where Swanson had placed it after filling the needle.

A search was executed at the defendant's apartment in Gloucester. The police seized six bags stamped "Power 95." After the defendant was advised of his rights, he admitted to drug dealing and to selling Swanson two bags of "Power 95" heroin.

The evidence retrieved from Swanson's apartment and from the defendant's apartment was analyzed by the Department of Public Safety crime laboratory. The empty bag stamped "Power 95" retrieved from the trash receptacle was found to contain heroin, although the strength and amount could not be determined. The other bag stamped "Power 95," found in Swanson's kitchen, was found to contain seventy milligrams of forty-six per cent pure heroin. The average bag of heroin contains between thirty and forty milligrams of fifty per cent pure heroin. Thus, the single dose bag recovered from Swanson's apartment was approximately twice as strong as the average single dose bag of heroin. In addition, the six bags stamped "Power 95" retrieved from the defendant's apartment were found to contain heroin.

The victim's body fluids also were analyzed at the Department of Public Safety crime laboratory. Her blood was found to contain fourteen micrograms per cent of morphine and six micrograms per cent of codeine. These results were consistent with a lethal dose of heroin as determined from testing other persons who had died from heroin overdose. With the exception of alcohol, there were no other drugs found in her system.

In the year of Swanson's death, between 225 and 315 Massachusetts deaths were attributed to heroin abuse. Between eight and twelve of those deaths occurred in Gloucester alone. Two of the Gloucester deaths resulted from the injection of "Power 95" heroin.

1. *Unlawful-act manslaughter.* The reasons stated in the *Catalina* case, *supra*, for the inapplicability of unlawful-act manslaughter to an indictment framed under *Commonwealth* v. *Welansky*, *supra* at 400, are equally relevant to this case.

See note 1, *supra.* For the reasons previously stated, the answer to the first reported question is "no."

2. *Welansky manslaughter.* In *Catalina, supra* at 789, we described the requirements for proving involuntary manslaughter under the theory stated in *Commonwealth* v. *Welansky, supra* at 399, noting that the critical inquiry is whether the defendant has engaged in wanton or reckless conduct, which conduct, either subjectively or objectively, "involves a high degree of likelihood that substantial harm will result to another." In *Catalina,* we concluded that the evidence before the grand jury provided probable cause to believe that the defendant had committed involuntary manslaughter under the *Welansky* theory. The defendant in this case is charged with committing the identical felony as did the defendant in *Catalina,* distribution of heroin, a class A controlled substance, in violation of G. L. c. 94C, § 32. As we noted at some length in *Catalina,* this felony is treated as a particularly serious crime by both Congress and our Legislature. The evidence before the grand jury in this case also indicated that the dose of "Power 95" heroin sold by the defendant was twice as strong as the average dose, that he had a supply of "Power 95" heroin at his home, and that "Power 95" heroin had caused at least two deaths by overdose in the Gloucester area. As we also noted in the *Catalina* case, " 'one can reasonably conclude that the consumption of heroin in unknown strength is dangerous to human life, and the administering of such a drug is inherently dangerous and does carry a high possibility that death will occur.' " *Commonwealth* v. *Catalina, supra* at 791, quoting *People* v. *Cruciani,* 70 Misc. 2d 528, 536 (N.Y. 1972). Emphasizing that we are dealing only with the standard of probable cause, see *Commonwealth* v. *McCarthy,* 385 Mass. 160, 163 (1982), we conclude that these facts and considerations bring this case within the principles discussed in *Catalina.* It fol-

lows that our answer to the second reported question is "yes."[2]

---

[2]We reject the defendant's argument on the issue of causation for the same reasons that we rejected the identical arguments raised by the defendant in *Catalina, supra* at 791.