Lombardo, J.
This is an action brought under G.Lc. 258A providing for compensation for victims of violent crimes, in which plaintiff seeks to recover funeral costs of her daughter, Kelly Marshall, who died of a drug overdose in the City of N ew Bedford on July 26,1987.
At trial, there was evidence tending to show that the victim was sold the drugs that killed her and that her own conduct contributed to her death. The trial court, upon independent review of all the evidence submitted by the office of the Attorney General,found by apreponderancethat thevictim’s death was the resultof involuntary manslaughter.[2] The court, ruling that involuntary manslaughter must draw from an assault and battery, concluded that the act causing the victim’s death was one of force or violence within the meaning of G.Lc. 258A,§1. Pursuantto G.Lc.258A,§3(c) the victim’s mother was awarded funeral expenses in the amount of $2,046.00. The Commonwealth has appealed the court’s finding that involuntary manslaughter must necessarily result from an act involving the application of force or violence.
The Compensation of Victims of Violent Crimes Act, G.Lc. 258A §1, requires that the act constituting the crime upon which a claim is based involve the “application of force or violence or the threat of force or violence by the offender upon the victim.” The trial court’s finding for the plaintiff in this case follows from its ruling in the report that “involuntary manslaughter under case law must draw from an assault and battery.” (emphasis supplied) Having found that the victim’s death was the result of involuntary manslaughter, the court concluded that the conduct precipitating her death was one of force and violence and therefore eligible for compensation.
However, case law does not mandate that involuntary manslaughter necessarily result from an assault and battery. Massachusetts case law had established involuntary manslaughter in one of two ways. The first was unlawful-act manslaughter, in which the victim’s death resulted from a misdemeanor or some other wrongful act. See Commonwealth v. Campbell, 352 Mass. 387, 397 (1967). Death resulting from an *223 assault and battery would be an example of this type of manslaughter. See Commonwealth v. Sheppard, 404 Mass. 774 (1989). Additionally, a charge of involuntary manslaughter would be supported if a death resulted from conduct constituting such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct. Commonwealth v. Welansky, 316 Mass. 383, 399 (1944).
In two recent cases, the Supreme Judicial Court has redefined the common law definition of involuntary manslaughter. See Commonwealth v. Catalina, 407 Mass. 779 (1990); Commonwealth v. Auditors, 407 Mass. 793 (1990). In these two cases, the Court abandoned unlawful-act manslaughter in Massachusetts except in cases where death results from a battery. Catalina, supra at 789; Auditors, supra at 795. Manslaughter resulting from wanton and reckless conduct under the Welansky standard was retained. Catalina, supra at 789.
The SJ C did support indictments in both cases against the defendants because their sales of heroin to victims were found to be wanton and reckless conduct, supporting manslaughter charges. Similarly, the act that led to the death of the victim in this case (i.e. furnishing her with drugs) may have supported a finding of involuntary manslaughter, however, the actwould have been wanton and reckless conduct rather than a battery. The record before the court does not suggest that a direct battery was committed on the victim causing her death.
Evidence was presented that the individual who sold drugs to the victim committed the misdemeanor of distribution of a controlled substance in violation G.Lc. 94C, §32D. The individual stated to police that he admitted selling 30 pills of “Xanax” to Kelly Marshall. The victim was in a depressed state of mind the night of her death as her boyfriend had recently died from carbon monoxide poisoning and she had had a fight with a new boyfriend thatnight. There is also evidence suggesting that thevictim was intoxicated at the time and likely had already ingested narcotics of some kind. It is not unreasonable to conclude that providing such a large quantity of narcotics to a person in Kelly Marshall’s condition would constitute a substantial risk of her overdosing to such a degree as to result in her death.
The report also suggests, based on the statements of persons present at the location of the victim’s death, that inadequate measures were taken to summon medical aid for the victim. Witnesses stated that the victim was, by 3:30 A.M., in an unconscious condition and that numerous attempts were made by individuals to revive her, but to no avail. Medical assistance was not summoned until approximately 10:00 A.M. the following morning.
These facts are suggestive of wanton and reckless conduct on the part of one or several individuals resulting in the death of the victim. Welansky, supra, defines wanton or reckless conduct as"... intentional conduct, by way either of commission or of omission where there is a duty to act, which involves a high degree of likelihood that substantial harm will result to another.” Id. at 399. The individual or individuals involved in the victim’s death in this case intentionally and recklessly supplied a deeply depressed Kelly Marshall with a deadly dose of narcotics. Furthermore, upon seeing the dangerous effect of those drugs on the victim, these same individuals failed to render medical aid in a reasonable and timely manner.
Based on the evidence before it, the trial court rightly could have determined by a preponderance that Kelly Marshall’s death was the result of wanton and reckless conduct (i.e. involuntary manslaughter). The issue remaining on this appeal is whether afinding of an application of force or violence is implicit to a finding of wanton and reckless conduct resulting in death.
This court reasserts the holding Welansky, supra, that “‘[w]anton and reckless conduct’ is the legal equivalent of intentional conduct, and if bodily injury is thereby caused another, the result is an ‘assault and battery’...” Id. at 383. In so concluding, we are of the opinion that in the instant case the legal equivalent of a battery was committed on the victim. The trial judge was justified in concluding, after weighing all of the evidence, that a crime involving the application of force or violence within the *224 definition of C.258A, §1 could follow from the wanton and reckless conduct of individuals supplying drugs to this victim. See Rath v. Commonwealth, 1984 Mass. App. Div. 255, 265-66.
The trial court, by its own finding of victim’s contribution to her death, must reduce the claim of the victim’s mother by the amount of said contribution[3] G.Lc. 258A, §6. This it has done. The trial judge did determine the amount of contribution attributable to the victim andreduced the claim accordingly. This appellate court will not question that factual finding.
The award, however, exceeds the statutory limit of $2,000.00 for funeral expenses. G.Lc. 258A, §3(c). Therefore, the amount attributed to the contributory conduct of the plaintiff should be deducted from the statutory amount ($2,000). Accordingly the award of the trial court must be reduced to an amount of $1,651.00, as amended. The judge’s finding is affirmed.
So ordered.

 The New Bedford Police Department conducted an investigation but brought no manslaughter charges against the individual.

 G.Lc. 258A, §6 provides in relevant part that“[i]n determining the amountof compensation payable, the court shall determine whether because of his conduct the victim contributed to the infliction of his injury; and the court shall reduce the amount of the compensation or deny the claim altogether, in accordance with such determination.”