COMMONWEALTH vs. DAMON SNEED.

Plymouth. May 7, 1992. - August 13, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* Instructions to jury. *Homicide. Malice. Wanton or Reckless Conduct. Evidence,* Hearsay, Learned treatise, Relevancy and materiality, State of mind, Motive.

At the trial of an indictment charging the defendant with murder in the second degree, the judge's instructions to the jury concerning the second prong of malice, giving the jury the option of finding second-prong malice based on proof of "bodily injury" rather than on proof of "grievous bodily injury," would have improperly permitted a reasonable juror to find malice on a lesser level of proof than the law requires and, consequently, the defendant was entitled to a new trial. [389-393]

An instruction to the jury on involuntary manslaughter would be required at a new trial of a defendant on an indictment charging second degree murder where, assuming that substantially the same evidence is presented then as was presented at the first trial, the evidence would warrant a finding that the defendant committed a battery on the victim, not amounting to a felony, and that the defendant's conduct created the requisite level of risk of harm to the victim to constitute involuntary manslaughter on the theory of battery causing death. [393-394]

This court adopted Proposed Mass. R. Evid. 803 (18) of its Advisory Committee to Study the Rules of Evidence, which permits a party challenging an expert's opinion on cross-examination to interrogate that expert about a relevant, divergent opinion expressed in a reputable treatise, thus allowing the admission of certain learned treatises, although hearsay, in certain circumstances. [394-396]

The judge at the second trial of a defendant on an indictment charging second degree murder would not, assuming the circumstances are the same as in the first trial, abuse his discretion in admitting evidence of the defendant's violent striking of the seventeen month old victim shortly before the victim's date of death, subject to an instruction limiting the use of this evidence to show the defendant's state of mind or motive and to negate accident as the cause of the victim's injuries; moreover, the judge would be warranted in his discretion in excluding evidence of the mother's disciplinary treatment of her children. [396-397]

INDICTMENT found and returned in the Superior Court Department on June 27, 1988.

The case was tried before *Robert L. Steadman*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Bruce Ferg* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. A jury found the defendant guilty of murder in the second degree on an indictment charging him with murder in the second degree of Robert St. Clair, the seventeen month old son of the defendant's girl friend. We grant a new trial because the judge's ambivalent instruction concerning the second prong of malice would have permitted a reasonable juror to find malice on a lesser level of proof than the law requires. See *Commonwealth v. Moreira*, 385 Mass. 792, 796 (1982).[1]

In May, 1988, the defendant was living in the Brockton apartment of Barbara St. Clair with her and her three children, the youngest of whom was the victim. On May 20, St. Clair took her daughter to her school bus stop and her older son to a dentist, while the defendant remained with Robert. When St. Clair returned to the apartment approximately two hours later, paramedics were carrying the unconscious victim to an ambulance. At the Brockton Hospital, the victim's symptoms suggested some kind of intracranial event. Robert was transferred to the Children's Hospital in Boston where the attending physician diagnosed Robert as having "suffered profound neurologic injury secondary to massive blunt

---

[1]Malice as an element of murder may be proved by evidence establishing any one of three facts beyond a reasonable doubt: if, without justification or excuse, (1) the defendant intended to kill the victim (the so-called first prong of malice), or (2) the defendant intended to do the victim grievous bodily harm (the second prong), or (3) in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that death would follow the contemplated act (the third prong). *Commonwealth v. Grey*, 399 Mass. 469, 470 n.1 (1987).

trauma to the head." The victim's condition deteriorated during the next several days. On May 27, 1988, he died.

There was medical testimony that the very severe tissue damage to the victim's brain was not consistent with a short fall, such as from a high chair. The physician who conducted the autopsy testified that the victim's death was caused by blunt trauma to the head. He said that the force necessary to cause the victim's injuries would have been severe, such as would be caused by a fall from a multiple-story building.

The defendant first told the police who came to the apartment that Robert had been in his crib. He told St. Clair and an ambulance attendant that he did not know what had happened. Later he told a social worker that Robert must have fallen out of the crib. Still later he told another social worker that he had put the victim in a high chair and that the child must have tried to climb out of it. The defendant made other inconsistent statements.

The case against the defendant was entirely circumstantial. There was no eyewitness testimony concerning the circumstances under which Robert sustained his traumatic brain injuries. The defendant's position was that the victim's injuries could have been caused by an accidental fall and that, at most, the defendant was negligent. Implicit in such a contention is the alternative, but unspoken, defense position that at least the victim's injuries would not warrant a finding of malice, and hence the defendant could be guilty of no more than manslaughter.

1. The judge instructed the jury that malice "is the attempt to *inflict injury* without legal justification" (emphasis supplied). He then told the jury that malice includes "a killing done with the intent to *inflict serious injury* without legal justification or mitigating circumstances" (emphasis supplied). Next, the judge said that "[i]f there was an intention on the part of the defendant to *inflict injury* upon the deceased which was not justified [or excused] . . . by existence of any mitigating circumstances, that intention was malicious within the meaning of the law" (emphasis supplied). The judge also instructed the jury on involuntary manslaughter

on the basis of wanton or reckless conduct. See *Commonwealth* v. *Welansky*, 316 Mass. 383 (1944).

At the conclusion of the charge, defense counsel said that, in defining malice, the judge had used intent to inflict serious injury or serious bodily harm on some occasions and that on others the judge had referred to an intent simply to inflict injury. Defense counsel accurately said that an intent to commit grievous injury was the proper element. After this discussion, the judge correctly said that "it's clear that it should be grievous bodily harm, that's the language in the cases." He said that he would give the defendant's requested instruction number 16, which, in defining the second prong of malice, referred to an unexcused intent to do grievous bodily harm. The prosecutor then led the judge to error, arguing that an intent to inflict any injury without justification would be malice, citing *Commonwealth* v. *Davis*, 364 Mass. 555 (1974), and *Commonwealth* v. *McCauley*, 355 Mass. 554 (1969). She said that "there is no magic language about what type of injury." The judge then said that he thought the cases refer to it both ways and that both counsel were correct.[2]

---

[2] When the judge asked defense counsel for his reaction to the prosecutor's statement, counsel said that the prosecutor's cases were old and that "the bulk of the later ones, talk about serious grievous bodily harm. . . . I think it has to be an intention to commit grievous bodily harm." The prosecutor then replied that "[grievous bodily injury] unnecessarily draws the jury's mind to distinguishing as to how badly he intended to hurt the child as opposed to simply did he have a malicious intent to inflict injury on this child." The prosecutor was correct in stating what a reference to grievous bodily injury would do. The question of what kind of injury the defendant may have intended to cause is precisely the issue to which the jury's attention should have been drawn in deciding whether the second prong of malice was proven.

The judge concluded, "I think the case law still remains the same. If the Court above wants to narrow it down and say that it's got to be grievous bodily harm, so be it. I'm not persuaded that to demonstrate malice it must be, particularly in a case like this, grievous bodily injury, but what we're talking about is not whether or not — it's one of the elements — but we're talking about whether or not there was malice there, and I think malice still can be proven by the intent to injure. I will let that stand."

Shortly after the jury retired to deliberate, the foreman of the jury sent a note to the judge stating that the jury were "having a difficult time distinguishing the difference between second degree murder and manslaughter. The difference appears subtle and the word 'malice' appears to be the key. Please provide the legal definition of malice and any other clarification that I may have overlooked." The judge then gave the same instruction that he had given previously on murder and malice. We cannot know, of course, whether the jury were confused by the ambiguity in the charge between "bodily injury" and "serious bodily injury." The possibility of such confusion is, however, apparent. If the judge was wrong to refer simply to bodily injury, rather than to grievous bodily injury, the jury may have been misled, and an order for a new trial is the only proper disposition of this case.

The Commonwealth argues that (a) viewed as a whole, the charge informed the jury that to find malice based on an intentional act of the defendant, the jury had to find that the intentional act created a likelihood of death or grievous injury; and (b) because the instruction on the third prong of malice was properly given, the jury could not have been misled into believing that a finding of malice could be based on an intention to inflict any sort of injury. The Commonwealth no longer seriously argues that an intention to inflict any kind of bodily injury meets the standard of the second prong of malice. It does note that the statement that malice involves an intention to inflict injury is supported by language in an opinion of this court twelve years ago. See *Commonwealth* v. *Hodge (No. 2)*, 380 Mass. 858, 865 (1980).[3]

Our recent cases are not in disarray on the question whether second-prong malice may be proved by an intention to cause less than serious or grievous bodily harm. We have been generally consistent in stating that the intended harm

[3]Neither of the cases that the prosecutor presented to the judge in support of her argument that an intention to cause bodily injury of any sort would justify a finding of second-prong malice even defines malice, rightly or wrongly. See *Commonwealth* v. *Davis*, 364 Mass. 555 (1974), and *Commonwealth* v. *McCauley*, 355 Mass. 554 (1969).

must be grievous bodily harm. See *Commonwealth* v. *Sama,* 411 Mass. 293, 296 n.1 (1991); *Commonwealth* v. *Halbert,* 410 Mass. 534, 536 n.3 (1991); *Commonwealth* v. *Grey,* 399 Mass. 469, 470 n.1 (1987); *Commonwealth* v. *Puleio,* 394 Mass. 101, 108 (1985). In some opinions in the past twenty years (and in only one recently), where deaths were caused by gunshot or by some other dangerous instrument and there was no appellate issue concerning the severity of any intended bodily harm, the court has used a summary definition of the second prong of malice that does not refer to the grievousness of the intended bodily injury. See, e.g., *Commonwealth* v. *Colon-Cruz,* 408 Mass. 533, 547 (1990) (gun); *Commonwealth* v. *Hodge (No. 2),* supra at 865 (gun); *Commonwealth* v. *Campbell,* 375 Mass. 308, 312 (1978) (knife); *Commonwealth* v. *Amazeen,* 375 Mass. 73, 80 (1978) (hammer, motor vehicle). Cf. *Commonwealth* v. *McGuirk,* 376 Mass. 338, 344-346 (1978), cert. denied, 439 U.S. 1120 (1979) (admission during plea bargain colloquy of severe beating of victim showed intention to inflict injury sufficient to show malice; denial of plea withdrawal upheld).

We simply disagree with the Commonwealth's argument that the judge's charge, viewed as a whole, told the jury that they must find an intention to cause serious bodily injury or harm in order to find second-prong malice. The judge gave the jury two different definitions of second-prong malice. One had to be wrong. The jury had the option of finding second-prong malice based on an intent to inflict injury. We reject this option. The intention must be to do grievous bodily injury or harm. The fact that the judge gave a proper instruction on the third prong of malice does nothing to eliminate the possibility that the jury found malice based on an inadequate definition of second-prong malice.

If we were to accept an intention to cause any kind of bodily injury as a proper element of second-prong malice, the distinction between murder and involuntary manslaughter, already a difficult one to draw on particular facts, would be made less clear, and the two crimes, in this respect, would not reflect defendants' relative moral culpabilities. As we

shall point out in the second part of this opinion, each type of involuntary manslaughter requires a showing that the defendant knew, or should have known, that his conduct created a high degree of likelihood that substantial harm would result to another.[4] If malice could be proved by a showing that the defendant only intended to cause slight bodily injury, murder could involve less threatening and less morally blameworthy conduct than involuntary manslaughter. By requiring proof of grievous bodily injury (and not just bodily injury) in the second prong of malice, we appropriately make criminal liability and punishment for an act proportionate to the actor's moral culpability for that act. See *Commonwealth* v. *Catalina*, 407 Mass. 779, 785-786 (1990); *Commonwealth* v. *Matchett*, 386 Mass. 492, 506-507 (1982).

Because there must be a new trial, we turn to issues that may arise at that trial.

2. The defendant requested the judge to instruct the jury that they could return a verdict of guilty of involuntary manslaughter based on a death caused by the commission of an unlawful act, not amounting to a felony and not endangering life. The judge declined to give such an instruction but did give an instruction on involuntary manslaughter based on wanton and reckless conduct. See *Commonwealth* v. *Welansky*, 316 Mass. 383 (1944).

Since the trial of this case, this court has decided *Commonwealth* v. *Catalina, supra,* in which we said that "a person henceforth may be prosecuted for involuntary manslaughter only for causing an unintentional death (1) during the commission of wanton or reckless conduct, as defined in *Commonwealth* v. *Welansky, supra,* or (2) during the commission of a battery, under the principles set forth in [*Commonwealth* v. *Sheppard*, 404 Mass. 774 (1989)], and the

---

[4]One aspect of involuntary manslaughter involves wanton and reckless conduct causing death. See *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990); *Commonwealth* v. *Welansky*, 316 Mass. 383, 398-399 (1944). The other aspect of involuntary manslaughter concerns an unlawful homicide, unintentionally caused in the commission of a battery not amounting to a felony. *Commonwealth* v. *Sheppard*, 404 Mass. 774 (1989).

other cases cited therein." *Id.* at 789. We need not decide whether the judge was correct in declining to give the jury an involuntary manslaughter instruction based on the second of these options. The question is rather whether such an instruction will be required at the new trial, assuming that substantially the same evidence is presented then as was presented at the first trial. We conclude that such an instruction is required. The evidence would warrant a finding that the defendant committed a battery on the victim, that the battery was not a felony, and that the defendant's conduct created the requisite level of risk of harm to the victim to constitute involuntary manslaughter on the theory of battery causing death.

The level of the risk of physical harm that the evidence must show to warrant an instruction on involuntary manslaughter battery causing death is that stated in *Commonwealth v. Welansky, supra* at 399, under the wanton and reckless theory of involuntary manslaughter ("a high degree of likelihood that substantial harm will result to another").[5] Thus the same standard of proof is applicable to both types of involuntary manslaughter and expresses a level of risk of physical harm below those levels that must be shown for a conviction of murder in the first degree (a) on the theory of felony-murder (*Commonwealth v. Matchett*, 386 Mass. 492, 508 [1982]) ("conscious disregard of the risk to human life") and (b) on the basis of third-prong malice (*Commonwealth v. Sires, ante* 292, 303 [1992]) ("plain and strong likelihood that death would follow the act").

3. The judge declined to permit defense counsel to read aloud from a medical treatise while cross-examining a medical expert. In ruling as he did, the judge followed the law of the Commonwealth. See *Allen v. Boston Elevated Ry.*, 212 Mass. 191, 193-194 (1912). Cf. *Framingham v. Department of Pub. Utils.*, 355 Mass. 138, 145 (1969) ("learned treatises" not admissible to prove truth of their contents);

---

[5]In stating this principle, we clarify what we said in *Commonwealth v. Sheppard, supra* at 777, and in *Commonwealth v. Catalina, supra* at 787.

*Percoco's Case*, 273 Mass. 429, 430-431 (1930) (medical treatise not admissible for impeachment except when offered to show expert's reliance on treatise was misplaced). But see G. L. c. 233, § 79C (1990 ed.) (medical malpractice actions). The defendant does not argue otherwise. He urged the judge, however, to follow Proposed Mass. R. Evid. 803 (18), which allows the admission of certain learned treatises, although hearsay, in certain circumstances.[6] In proposing this rule, this court's Advisory Committee commented that the rule was limited to statements called to the attention of an expert witness on cross-examination and that "[i]n according substantive value to learned treatises, this rule recognizes that such works have a high standard of accuracy and that the effectiveness of limiting instructions as regards credibility is often questionable."[7]

Because there is to be a new trial, we need not consider whether the defendant's treatment of treatise statements would have met the conditions of proposed rule 803 (18). We are presented, however, with an opportunity to decide whether we will accept proposed rule 803 (18) and thus provide a learned treatise exception to the hearsay rule, as many

---

[6]Proposed rule 803 (18) states the exclusion as follows: "Learned Treatises. To the extent called to the attention of an expert witness upon cross-examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."

The comments on rule 803 (18) of the court's Advisory Committee to Study the Rules of Evidence (July, 1980) pointed out that "[t]his provision is similar to the federal rule, with the exception that the language 'or relied upon by him in direct examination' [appearing after the word "cross-examination" in the introductory phrase] in the federal rule is stricken. The result [of the change from the Federal rule] is to make treatises unavailable to bolster direct examination."

[7]This last observation concerns the rule's rejection of the use of a learned treatise solely for the purpose of impeachment of an expert witness, with the judge instructing the jury to disregard the content of the treatise for the purposes of substantive proof. See *Allen* v. *Boston Elevated Ry.*, 212 Mass. 191, 194-195 (1912) (questioning the efficacy of such a limiting instruction in the circumstances).

States have done. See 4 Weinstein & Berger, Weinstein's Evidence par. 803 (18) [03] (1991 & Supp. 1992); 6 J. Wigmore, Evidence § 1693 (Chadbourn rev. ed. 1976 & Supp. 1991).

Proposed rule 803 (18) requires that an opponent of the expert witness bring to the witness's attention a specific statement in a treatise that has been established, to the judge's satisfaction, as a reliable authority. The witness should be given a fair opportunity to assess the statement in context and to comment on it, either during cross-examination or on redirect examination. The judge, of course, will have to determine the relevance and materiality of the statement and should consider carefully any claimed unfairness or confusion that admission of the statement may create.

We see potential benefit, and little risk of harm, in adopting the proposed Massachusetts rule of evidence, which permits a party challenging an expert's opinion to interrogate that expert about a relevant, divergent opinion expressed in a reputable book. See *Reilly* v. *Pinkus*, 338 U.S. 269, 275 (1949). Admission in evidence of a statement from a treatise of the kind referred to in proposed rule 803 (18), whose authenticity and reliability are shown, which was not written for use in litigation, and which expresses an expert opinion on a subject relevant to the case on trial, will tend to enhance, rather than detract from, the truth-finding function. See 6 Wigmore, Evidence, *supra* at § 1692; 4 Weinstein's Evidence, *supra* at par. 803 (18) [01].[8]

4. If the circumstances are the same, the judge at the second trial would not abuse his or her discretion in making other evidentiary rulings that the defendant challenges in this appeal.

Evidence of the defendant's violent striking of the victim shortly before the date of death was admissible, in the

---

[8]We can imagine a situation in which, in fairness, portions of a learned treatise not called to the attention of a witness during cross-examination should be admitted on request of the expert's proponent in order to explain, limit, or contradict a statement ruled admissible under rule 803 (18).

judge's discretion and subject to a limiting instruction, to show the defendant's state of mind or motive and to negate accident as the cause of the victim's injuries. See *Commonwealth* v. *Scott*, 408 Mass. 811, 818-819 (1990); *Commonwealth* v. *Robertson*, 408 Mass. 747, 751 (1990); *Commonwealth* v. *Gallison*, 383 Mass. 659, 672-673 (1981).

The judge was warranted in his discretion in excluding evidence of the mother's disciplinary treatment of her children. The level of the mother's physical violence toward her children shown by the proffered evidence was not substantial. This evidence, offered to show that the mother may have caused the victim's injuries (see *Commonwealth* v. *Graziano*, 368 Mass. 325, 329-330 [1975]), is not of such significant probative value that its exclusion was an abuse of discretion. See *Commonwealth* v. *Harris*, 395 Mass. 296, 300 (1985).

5. The verdict is set aside. The judgment is reversed and the case remanded to the Superior Court for a new trial.

*So ordered.*