COMMONWEALTH *vs.* CHERYL L. PERRY.

No. 92-P-432.

Bristol. October 20, 1992. - February 8, 1993.

Present: ARMSTRONG, PERRETTA, & IRELAND, JJ.

Further appellate review granted, 414 Mass. 1106 (1993).

*Practice, Criminal*, Dismissal, Indictment. *Homicide. Wanton or Reckless Conduct. Controlled Substances.*

Evidence presented to a grand jury that the defendant procured heroin for a person whom she knew to be a heroin addict and who then died from injecting the drug supported an indictment for involuntary manslaughter where, in view of the inherently dangerous nature of heroin, the defendant's conduct involved a high degree of likelihood that substantial harm would result, and, furthermore, the defendant's conduct indicated a subjective awareness of the risk involved with the use of heroin. [128-130]

INDICTMENTS found and returned in the Superior Court Department on November 8, 1990.

The case was heard by *Herbert F. Travers, Jr.*, J., on a motion to dismiss.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

*Kathleen V. Curley*, Committee for Public Counsel Services (*Colleen A. Tynan* with her) for the defendant.

IRELAND, J. The defendant, Cheryl L. Perry, was indicted by a grand jury for involuntary manslaughter, G. L. c. 265, § 13, and illegal possession of a hypodermic needle, G. L. c. 94C, § 27. The defendant filed a motion to dismiss each charge on the ground that the evidence presented to the grand jury was insufficient in regard to the two offenses. See *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). The motion was apparently allowed as to both charges. The Commonwealth appeals, claiming that the judge erred in finding that there was "not sufficient evidence that the de-

fendant engaged in wanton or reckless conduct and thereby caused the death of the victim." We agree with the Commonwealth's contention and, as there appears to be little dispute that the defendant illegally possessed a hypodermic needle, we reverse the order dismissing both indictments.

*The facts.* The evidence presented to the grand jury viewed in the light most favorable to the Commonwealth was as follows. The defendant, a heroin addict, arranged the purchase of ten bags of heroin for a friend, Michael Moscuzza, whom she knew to be a heroin addict and for whom she had previously purchased heroin. Moscuzza paid for the purchase and promised to give the defendant one bag of heroin for her role in arranging the purchase. The defendant, Moscuzza, and two others drove in Moscuzza's car from North Attleborough to Providence to pick up the drugs. The defendant called her supplier at a beeper number, and the drugs were delivered to her in the parking lot of a gas station. As agreed, Moscuzza gave the defendant one bag of heroin and then injected himself with four bags of the heroin. Shortly thereafter he passed out, and by the next morning, without regaining consciousness, he died. There was also evidence that the defendant had injected another passenger in the car with heroin.

*Discussion.* The Commonwealth contends that the evidence presented to the grand jury was sufficient to support an indictment for involuntary manslaughter on the basis of the defendant's wanton or reckless conduct. Specifically, the Commonwealth points to the defendant's subjective awareness of the danger of heroin, as well as the inherently dangerous nature of the drug.

The defendant responds that her conduct in assisting Moscuzza to obtain the heroin did not create a foreseeable risk of death. She contends that she was not a dealer or supplier of the drugs, but a joint purchaser, or facilitator of the purchase, along with Moscuzza. She further argues that there was no evidence that the heroin was unusually potent or that the defendant knew it to be so. Instead, she claims, the deceased took an unusually large dose, which she could

not have anticipated; nor could she have anticipated the resulting death.

"Involuntary manslaughter is an unlawful homicide unintentionally caused by an act which constitutes such a disregard of probable harmful consequences to another as to amount to wanton or reckless conduct. . . ." *Commonwealth v. Vanderpool*, 367 Mass. 743, 747 (1975). "The essence of wanton or reckless conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another." *Commonwealth v. Welansky*, 316 Mass. 383, 399 (1944). *Commonwealth v. Catalina*, 407 Mass. 779, 791 (1990). The nature of the defendant's conduct may be evaluated either by the defendant's awareness of the reckless nature of the conduct (subjective standard), or by considering whether a reasonable person, in similar circumstances, would recognize the conduct as reckless (objective standard). *Id.* at 789. *Commonwealth v. Auditore*, 407 Mass. 793, 796 (1990).

The Supreme Judicial Court has held that the felonious distribution of heroin to a known addict who then died from injecting the drug may be the basis for an indictment of involuntary manslaughter. *Catalina*, 407 Mass. at 790-791. *Auditore*, 407 Mass. at 796. Citing studies of the dangers of heroin use, the court noted that "one can reasonably conclude that the consumption of heroin in unknown strength is dangerous to human life, and the administering of such a drug is inherently dangerous and does carry a high probability that death will occur. It is not unreasonable to conclude that the injection of heroin into the bloodstream of a human being constitutes a substantial and unjustifiable risk of death." *Id.* at 791, quoting from *People v. Cruciani*, 70 Misc. 2d 528, 536 (N.Y. 1972). The court also concluded that the act of the customer in injecting himself is not necessarily so unforeseeable as to insulate the seller from criminal responsibility. *Catalina, supra.*

The defendant procured the heroin for Moscuzza. Under a prearranged agreement, the defendant was to receive heroin

in exchange for arranging the purchase for Moscuzza. The defendant knew the supplier, contacted the supplier, and arranged the sale. The defendant drove the vehicle to pick up the drugs. Regardless of the label we attach to her role (seller or distributor), the defendant was instrumental in providing Moscuzza, a person she knew to be a heroin addict, with heroin. Given the "high mortality rate associated with the injection of heroin, the marked variability in heroin concentration, and the fact that any substantial quantity of heroin injected regularly could easily contain a lethal concentration," *Catalina*, 407 Mass. at 791, there was sufficient evidence to support an indictment for involuntary manslaughter based on the defendant's distribution of the drug to Moscuzza.

Furthermore, the defendant's conduct indicates her subjective awareness of the lethal risk involved with heroin use. The defendant was a heroin addict who had previously supplied Moscuzza with the drug. She tested her own drugs before injecting them, indicating her awareness of their potential potency. Moreover, the defendant was knowledgeable about the varying strengths of the drug: responding to Moscuzza's collapse after injecting himself, the defendant commented, "That's what happens when you get good stuff."

We conclude that the judge's finding that "[t]here is no evidence that the defendant knew that the heroin that she obtained for the deceased was deadly," if read as negating her awareness of the danger, was erroneous. Considering the inherently dangerous nature of heroin, the defendant's conduct involved a high degree of likelihood that substantial harm would result to Moscuzza. See *Welansky*, 316 Mass. at 399; *Catalina*, 407 Mass. at 791. Moreover, the defendant's conduct indicated a subjective awareness of the risk involved with the use of heroin.

The order dismissing the indictments is reversed, and the cases are to stand for trial.

*So ordered.*