Pierce, J.
In this appeal, we are asked to address two issues relating to the testimony of an expert witness called by the defendant-appellee, Commerce Insurance Company (“Commerce”): first, whether it was permissible, during direct examination of the expert, to elicit testimony regarding studies and guidelines relating to chiropractic care, as a basis for the expert’s opinion concerning treatment rendered by the plaintiff-appellant, Kantorosinski Chiropractic, Inc. (“Kantorosinski”); second, whether medical record review reports authored by the expert were admissible during the expert’s direct examination. We conclude that it was not permissible for Commerce to have elicited testimony from the expert regarding the studies and guidelines, and that the record reviews were not admissible during the expert’s direct examination. Because we find that the error may have substantially influenced the jury, we return the case for a new trial.
The relevant facts, taken from the appellate record, are as follows: Bona Diaz (“Diaz”), Felipa Toribio (‘Toribio”), and Darly Hernandez (“Hernandez”) were occupants of a motor vehicle that was involved in an accident on April 5, 2009. As of the date of the accident, Toribio held an automobile insurance policy issued by Commerce, with personal injury protection (“PIP”) benefits that extended to Hernandez and Diaz. After receiving treatment from Kantorosinski, all three submitted timely applications for PIP benefits to Commerce, together with Kantorosinski’s bills and records. Commerce, in turn, submitted the bills and records to Dr. Mark DeLorenzo (“DeLorenzo”), a licensed chiropractor and experienced expert witness, for a medical record review. DeLorenzo concluded that the treatment provided by Kantorosinski, after April 27, 2009 in the case of one of the patients, and after May 5, 2009 in the case of the other two patients, was unreasonable and excessive. Based on DeLorenzo’s conclusions, Commerce paid part, but not all, of the Kantorosinski bills. Lawsuits ensued. Kantorosinski’s complaints sought recovery under G.L.c. 90, §34M and also for breach of con *232 tract and breach of the implied covenant of good faith and fair dealing.[2]
A jury trial was conducted on September 8 and 9, 2011. At trial, a claims adjuster for Commerce testified that the amount billed for the first patient was $4,375.00, of which Commerce paid $1,887.50, leaving an unpaid balance of $2,487.50. For the second patient, the amount billed was $4,461.50. Of that amount, Commerce paid $1,846.50, leaving an unpaid balance of $2,615.00. For the third patient, the amount billed was $2,055.00, of which Commerce paid $830.00, leaving an unpaid balance of $1,225.00.[3]
The first and only witness for the defendant was DeLorenzo. After describing his education and work experience, DeLorenzo explained that he presently works part time as a chiropractor and part time for Expert Review, Inc. (“ERI”), doing medical record reviews relating to insurance claims. DeLorenzo recalled more than twenty occasions where he has conducted record reviews, through ERI, for Commerce. After testifying that he conducted record reviews for the three patients at issue in this case, DeLorenzo was asked to identify the reports he prepared relating to those reviews. The reports were printed on ERI stationery and signed by DeLorenzo. One report was dated August 27, 2009, the other two were dated September 1, 2009. Each report states that in preparation of the report, DeLorenzo reviewed an “Accident Reconstruction Report dated 06/12/09 from Charles Schack” (the “Accident Reconstruction Report”), a “Special Investigation Report dated 06/12/09 from Stephen J. D’Ercole” (the “Special Investigation Report”) and Kantorosinski’s notes and billing records.
DeLorenzo’s reports also recite that the treatment administered by Kantorosinski “consisted of manipulation along with passive therapies of EMS and moist heat,”[4] followed by the statement:
The use of passive modalities such as EMS, heat, ice and massage has been questioned in light of recent studies and guidelines. None of the therapies mentioned above has shown the ability to change treatment outcomes or speed recovery.
Commerce then asked that the three reports be admitted into evidence. Kantorosinski objected on the ground that the reports were inadmissible hearsay. Over that objection, the reports were admitted into evidence as business records.
After the reports were admitted, the direct examination of DeLorenzo continued with the following exchange:
Q: Could you identify those — specifically the studies that... the studies that you were referring to?
*233 A. There are a number of studies that are utilized outside — in chiropractic and in any kind of physical medicine. ODG, which is the Official Disability Guidelines, is a secondary source used by the Commonwealth of Massachusetts for industrial accidents.
After a further objection was overruled, counsel for Commerce asked:
Q: Is there also another study known as the Philadelphia Study?
Dr. DeLorenzo responded:
A: The Philadelphia Study is probably the most comprehensive study that we have out there that looks at passive modalities. It was published in 2002, and there is — it has been reinforced by several other studies since then.
Again, Kantorosinski’s objection was overruled. Further questions elicited similar testimony regarding “care paths” based on “current literature sources” and “evidence-based studies” recommended by the American College of Occupational and Environmental Medicine. After establishing that the treatment provided by Dr. Kantorosinski “was strictly passive,” Commerce asked:
Q: What are the clinical capabilities of passive care?
To that question, Dr. DeLorenzo responded:
A: Most of them are just palliative in nature. EMS has — the only study out there that shows that EMS has any kind of a short-term palliative effect is the UCLA study which incorporated chiropractic care and low-back pain. All other studies don’t recommend it as an ethical treatment.
At the conclusion of the trial, the jury returned a verdict for Commerce on all counts. This appeal followed.
1. First, we address Kantorosinski’s claim that the trial court impermissibly allowed Commerce’s expert to testify on direct examination regarding certain studies and guidelines relating to the chiropractic care that was administered. Since the issue was preserved by timely objections at trial, we review the issue under the prejudicial error standard. Commonwealth v. Womack, 457 Mass. 268, 273 (2010).
We are guided in this regard, if not compelled, by Mass. G. Evid. § 803 (18) (B) (2012), which sets forth standards relating to the admissibility of statements contained in published treatises, periodicals, or pamphlets on subjects of history, medicine, or other science or art[5] Subject to certain exceptions not applicable here, the *234 rule itself and cases construing it provide that references to treatises, periodicals, and pamphlets are “unavailable to bolster direct examination.” Brusard v. O’Toole, 429 Mass. 597, 601 n.5 (1999), quoting Comments of the Advisory Committee to Study the Rules of Evidence (July, 1980) on Proposed Mass. R. Evid. 803(18). See Commonwealth v. Johnson, 59 Mass. App. Ct. 164, 170 (2003).[6] The rationale for this rule may be “the fact that scientific progress has reached the point where even a recently expressed opinion, valid when made, may be all but obsolete shortly thereafter.” W.G. YOUNG, J.R. POLLETS & C. POREDA, EVIDENCE §803.18, at 182-183 (2d ed. 1998).
This rule is not without regard for the fact that an expert’s opinion often derives from published material in the experfs field of expertise. “But the fact that the expert has based his stated opinion upon such ‘hearsay’ information previously considered by him, does not render the information itself, or its sources admissible in evidence.” Id. §803.18, at 189. We note that the same is not true of cross-examination, where inquiry may be made of an expert regarding statements contained in treatises, periodicals, or pamphlets provided the reliability of the material has been established to the court’s satisfaction. See Mass. G. Evid. §803(18) (B).[7]
Having concluded that it was error to permit reference to the studies and guidelines on direct examination, we consider whether the error prejudiced the plaintiff. “An error is not prejudicial if it ‘did not influence the jury, or had but very slight effect.’ If we cannot conclude ‘with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, then it is prejudicial’” (citations omitted). Commonwealth v. Irene, 462 Mass. 600, 618-619 (2012), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).
DeLorenzo’s testimony concerning published studies and guidelines relating to chiropractic care was not limited to one or two references. Rather, the studies and guidelines were a central part of the experfs analysis. First, DeLorenzo referred nonspecifically to “[sjeveral guidelines” before twice referring to the Official Disability Guidelines (“ODG”). In subsequent questioning, he referred to the Philadelphia Study, which apparently does not endorse the care administered by Kantorosinski; the UCLA, which does support Kantorosinski’s course of treatment; and finally, “all other studies,” which do not. The core of Commerce’s defense was DeLorenzo’s expert testimony and his ultimate conclusion regarding the reasonableness of the treatment administered to the three patients. In large part, those conclusions depended on the studies and guidelines referred to by DeLorenzo.
*235 We cannot conclude that the judgment in favor of Commerce was not substantially swayed by the erroneous references to the studies and guidelines. Therefore, we are compelled to vacate the judgment and return the case for a new trial.
2. Because the issue may arise during a retrial of this matter, we also address Kantorosinski’s contention that it was error to admit into evidence, again during Commerce’s direct examination of DeLorenzo, the written record review reports. At trial and on appeal, Commerce contends that the reports were properly admitted as business records pursuant to G.L.c. 233, §78. We disagree.
To begin, we question whether DeLorenzo’s reports constitute the type of record contemplated by §78. While the exception may apply to memoranda, as well as to routine entries in business records, it does so only where the court finds “that it was the regular course of such business to make such memorandfa] or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter.” G.L.c. 233, §78. The court never made such a finding, nor was it ever asked to do so.
The essence of the business records exception is that the record is routinely made by those charged with the responsibility for making accurate entries and that the records are relied on in the course of doing business. See Wingate v. Emery Air Freight Corp., 385 Mass. 402, 406 (1982). Reports of medical record reviews, conducted by an independent contractor, working for a company regularly retained by Commerce for this purpose, would not appear to fall within the exception. See McLaughlin v. CGU Insurance Co., 445 Mass. 815, 819-820 (2006) (computer records from an automobile insurance carrier and from Registry of Motor Vehicles are admissible under business records exception); Deluty v. Commissioner of Ins., 7 Mass. App. Ct. 88, 96 (1979) (computer printouts customarily used by insurance companies would qualify for admission under §78).
The admissibility of the medical record review reports at issue here is further compromised by their reference to “recent studies and guidelines.” While not specified, it may be inferred that these were the same studies and guidelines impermis-sibly referred to during DeLorenzo’s direct examination. For the same reasons discussed above, an expert’s written report may not be bolstered by inadmissible hearsay. At a minimum, the references to “recent studies and guidelines” should have been stricken.
A final infirmity in the reports relates to DeLorenzo’s reliance on the Accident Reconstruction Report and the Special Investigation Report. It is well established that expert testimony may be based on: “(a) facts observed by the witness or otherwise in the witness’ direct personal knowledge; (b) evidence already in the record or that will be presented during the course of the proceedings, which facts may be assumed to be true in questions put to the witness; and (c) facts or data not in evidence if the facts or data are independently admissible in evidence and are a permissible basis for an expert to consider in formulating an opinion.” Mass. G. Evid. §703. See Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 531 (1986). There is nothing in the record to suggest that DeLorenzo had personal knowledge regarding the subject matter of either report, nor was either report introduced into evidence.
As to the third prong of §703, the court must determine whether the facts or data are independently admissible through appropriate witnesses. See Commonwealth v. Nardi, 452 Mass. 379, 392 (2008); Commonwealth v. Markvart, 437 Mass. 331, 337- *236 338 (2002). Here, no information was offered as to the content, scope, conclusions, or any other aspect of either report. Absent a determination of independent admissibility by the court, DeLorenzo could not rely on the material in formulating his expert opinion and it was error to admit into evidence reports referring to such material.
Judgment for the plaintiff is vacated, and the case is returned to the Salem District Court for a new trial.
So ordered.

 Originally filed as three separate actions, the matters were consolidated for trial.

 While these amounts were not contested at trial, they differ in some respects from the amounts contained in the records introduced as exhibits and from the statements of damages filed with the complaints. Those differences do not bear on the issues raised in this appeal.

 DeLorenzo testified that EMS refers to “electric muscle stimulation.”

 Proposed Mass. R. Evid. §803 (18) (B), which is substantially similar to Mass. G. Evid. §803(18), was adopted by the Supreme Judicial Court in Commonwealth v. Sneed, 413 Mass. 387, 396 (1992).

 Exceptions to the rule prohibiting references to treaties, periodicals, or pamphlets during direct examination include medical malpractice actions, expressly contemplated by Mass. G. Evid. §803(18) (A), and sexually dangerous persons hearings, where the admissibility of such material represents “‘a very radical departure’ from ordinary evidentiary rules.” McHoul, petitioner, 445 Mass. 143, 147 (2005), quoting Commonwealth v. McGruder, 348 Mass. 712, 715 (1965).

 There may also be situations on redirect examination where “portions of a learned treatise not called to the attention of a witness during cross-examination should be admitted on request of the experfs proponent.” Commonwealth v. Sneed, supra at 396 n.8.