Commonwealth *vs.* Joshua Halbert.

Essex. March 7, 1991. - July 2, 1991.

Present: Liacos, C.J., Wilkins, Abrams, Nolan, & Lynch, JJ

*Homicide. Practice, Criminal,* Instructions to jury, Capital case. *Malice. Intoxication. Intent. Felony-Murder Rule.*

At a first degree murder trial in which the defendant was convicted by special verdicts on theories of deliberate premeditation, extreme atrocity or cruelty, and felony-murder by joint venture, the judge's failure to instruct the jury to consider the defendant's voluntary intoxication as it bore on the question of intent did not create a substantial likelihood of a miscarriage of justice where the conviction was supported by an independent finding of guilt on a felony-murder theory on which the judge's instructions with respect to the issue of intent were entirely correct. [536-538]

Where insufficient evidence was presented at a murder trial to support a finding of reasonable provocation, the judge did not err in refusing to instruct the jury on voluntary manslaughter. [538-539]

Indictment found and returned in the Superior Court Department on October 19, 1988.

The case was tried before *John T. Ronan,* J.

*Albert S. Previte, Jr.,* for the defendant.

*Margaret J. Perry,* Assistant District Attorney, for the Commonwealth.

Lynch, J. The defendant, Joshua Halbert, was convicted of murder in the first degree by special verdicts on theories of deliberate premeditation, extreme atrocity or cruelty, and felony-murder by joint venture. The defendant appeals on the ground that the judge improperly instructed the jury that they could not consider voluntary intoxication in determining whether the defendant had the specific intent required for the crime of murder. In addition, the defendant seeks a new trial or reduction of the verdict pursuant to G. L. c. 278,

§ 33E (1990 ed.), on the ground that the judge erred in refusing to instruct the jury on manslaughter where there was evidence of provocation. We affirm.

The jury could have found the following facts.[1] At around 10 P.M. on September 28, 1988, the defendant met his friends Kevin Pierce and John Nichypour. Pierce asked the defendant, "Are you ready to roll a fag tonight?" The defendant responded, "Why not? It's been a while. As long as he doesn't get severely hurt." Pierce telephoned the victim, a thirty-eight year old man whom he apparently knew. The victim picked up the three men and drove them back to his apartment.

After a short time at the apartment (during which the defendant drank beer and Southern Comfort whisky), the defendant and Nichypour left to buy cigarettes. When they returned at around 11 P.M., Pierce took the defendant aside and informed him that the victim had grabbed Pierce's penis while the defendant and Nichypour were out. The defendant asked, "Do you want me to give him a beating?" Pierce instead proposed that they kill the victim. The defendant initially refused, but when Pierce asked the defendant if he was "chicken," the defendant said he was not.

The group reassembled in the apartment where they watched portions of an old movie and of a pornographic film. The defendant stated that he was "pretty much hammered" at this point. Pierce told the victim that Pierce and his friends were homosexuals. The victim asked the defendant, "Josh, what do you want to do?" The defendant said, "I'm not into that stuff." Pierce then grabbed the victim, locking an arm around his neck in a "sleeper" hold and forcing the victim's face into a sofa. While Pierce choked the victim in this manner, the defendant kicked and punched him in the testicles saying, "You're going to get hurt because I'm not queer." The defendant slashed the victim's neck twice with a

---

[1]These facts are taken largely from a confession the defendant made while in police custody. The statement was introduced in evidence at trial, and the defendant does not contest its admissibility in this appeal.

razor blade he was carrying, then hit the victim on the head twice with a bottle. After releasing his hold on the victim's neck, Pierce stabbed him in the head, through the left temple, with a steak knife he found in the victim's kitchen. Seeing the victim convulsing, the defendant began to cry and said, "He's suffering." The defendant retrieved another steak knife from the kitchen, and with it Pierce stabbed the victim in the head a second time, again forcing the knife through the left temple. The defendant stated that the victim was dead, but Pierce continued to kick him in the face saying, "Die faggot. Die faggot." Pierce, Nichypour, and the defendant then cleaned their fingerprints from everything they had touched, and left. Nichypour took with him a sheet of thirty-two uncut, one-dollar bills that hung framed on the victim's wall, and Pierce stole a wooden box containing commemorative coins.[2]

1. The Commonwealth concedes that the judge erred in twice instructing the jury not to consider the defendant's voluntary intoxication in determining whether the defendant had formed the necessary malice for murder in the first degree with deliberate premeditation. See *Commonwealth v. Glass*, 401 Mass. 799, 809-810 (1988); *Commonwealth v. Grey*, 399 Mass. 469, 471 (1987); *Commonwealth v. Henson*, 394 Mass. 584, 593 (1985).[3] "[W]here proof of a crime

---

[2]The briefs indicate that, at separate trials, Pierce and Nichypour were convicted of murder in the first degree on theories of deliberate premeditation, extreme atrocity or cruelty, and felony-murder by joint venture.

[3]The crime of murder in the first degree (except for felony-murder) requires a killing done with malice aforethought. *Commonwealth v. Puleio*, 394 Mass. 101, 107-108 (1985). " 'Malice aforethought includes any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow.' *Commonwealth v. Huot*, 380 Mass. 403, 408 (1980). So, in order to convict a defendant of murder in the first degree, other than felony murder, the Commonwealth must prove that the defendant unjustifiably killed another, and that he intended to kill or to do grievous bodily harm to the victim, or that he intended to do an act creating a plain and strong likelihood that the victim's death or grievous harm would follow. The Commonwealth must also prove that the defendant acted with premeditation, or that the defendant acted with extreme atrocity or cruelty." *Puleio, supra* at 108. See G. L. c. 265, § 1 (1990 ed.).

requires proof of a specific criminal intent and there is evidence tending to show that the defendant was under the influence of alcohol or some other drug at the time of the crime, the judge should instruct the jury, if requested, that they may consider evidence of the defendant's intoxication at the time of the crime in deciding whether the Commonwealth has proved that specific intent beyond a reasonable doubt." *Id.* The defendant contends that he was under the influence of alcohol and LSD when he took part in the murder.

Nonetheless, we conclude that the judge's error did not create a "substantial likelihood of a miscarriage of justice" justifying reversal or reduction of the conviction pursuant to G. L. c. 278, § 33E.[4] The defendant was found guilty of murder in the first degree on a theory of felony-murder as well as the deliberate premeditation theory. In a felony-murder case the intent to commit the underlying felony substitutes for the malice required in an ordinary murder case. See *Commonwealth* v. *Griffith*, 404 Mass. 256, 259 (1989); *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982). The judge's charge on felony-murder was proper. He correctly instructed the jury on all the elements of felony-murder, and specifically told them that the defendant's intoxication could be considered in determining whether the defendant had formed the specific intent required for the underlying felony of robbery. The defendant does not challenge the jury charge on the principles of felony-murder. Thus, because the felony-murder theory forms an independent and untainted basis for the conviction of murder in the first degree, no substantial

---

[4]The defendant did not object to the jury instructions on the ground that the judge misstated the law regarding the relevance of intoxication to the determination whether the defendant had the specific intent required for a finding of malice, and thus failed to preserve the issue for appeal. *Commonwealth* v. *Coleman*, 389 Mass. 667, 671-672 (1983). Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979). Our review, therefore, is limited to whether the error created a "substantial likelihood of a miscarriage of justice." See *Commonwealth* v. *Griffith*, 404 Mass. 256, 260 n.4 (1989); *Commonwealth* v. *Coleman, supra* at 672-673.

likelihood of a miscarriage of justice arises from the improper charge regarding malice.

2. The defendant argues that the judge erred in refusing to instruct on voluntary manslaughter because there was evidence that the defendant was provoked.[5] We disagree. "Instructions on voluntary manslaughter must be given if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool." *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180 (1981), *S.C.*, 390 Mass. 722 (1984). Provocation is viewed objectively: "the jury must be able to infer that a reasonable person would have become sufficiently provoked." *Commonwealth* v. *Garabedian*, 399 Mass. 304, 313 (1987). Accord *Commonwealth* v. *Estremera*, 383 Mass. 382, 392 (1981). This court has consistently rejected the argument that provocation should be viewed subjectively through the eyes of the accused. *Commonwealth* v. *Garabedian*, *supra* at 315, and cases cited. In determining whether an instruction is warranted we view the evidence in the light most favorable to the defendant. *Commonwealth* v. *Schnopps*, *supra* at 179. We conclude that the facts of this case did not warrant an instruction on manslaughter.

The defendant suggests that he was provoked by the victim's homosexual advance, which consisted of the victim's

---

[5]In addition, the defendant suggests that the judge's instructions were deficient because he referred in passing to the victim's "murderer or murderers" and described the crime once as "this murder." The defendant argues that the use of these terms improperly prejudiced his defense by implying that the defendant had committed murder and that the jury's role was merely to determine which degree. See G. L. c. 265, § 1. The defendant did not object to the charge on this basis, and the words complained of appear only in the portion of the charge referring to murder by extreme cruelty. Moreover, the words are not dissimilar to words appearing in the charge we approved in *Commonwealth* v. *Sinnott*, 399 Mass. 863, 880 (1987) (mental impairment due to intoxication could be relevant "to the manner in which murder was committed"). Viewing the judge's charge *in its entirety, Commonwealth* v. *Blanchette*, 409 Mass. 99, 103 (1991), we conclude that the charge did not mislead the jury.

putting his hand on the defendant's knee and asking, "Josh, what do you want to do?" The defendant offered evidence that he was sexually abused as a child and that he was the victim of a homosexual "gang" rape shortly before the night of the murder. While the defendant's history of sexual abuse is tragic, it has no bearing on the question whether the victim's conduct satisfied the objective test of provocation. The issue is: would the victim's nonthreatening physical gesture and verbal invitation have provoked a reasonable person into a homicidal rage?

The victim's question ("Josh, what do you want to do?") was neither insulting nor hostile; it was at most a salacious invitation. Clearly, neither the question nor the accompanying physical gesture (the victim's placing his hand on the defendant's knee) would have been "likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint." *Commonwealth* v. *Walden*, 380 Mass. 724, 728 (1980). Because the evidence was insufficient to support a finding of reasonable provocation, the judge did not err in refusing to instruct the jury on voluntary manslaughter. *Commonwealth* v. *Troila, ante* 203 (1991).[6]

3. Finally, the defendant urges that we exercise our discretionary power under G. L. c. 278, § 33E, to reduce the verdict or order a new trial. We decline to do so.

There is abundant evidence suggesting that the defendant participated in the murder with deliberate premeditation. In light of the extreme brutality of the crime, we decline to grant relief pursuant to § 33E. See *Commonwealth* v. *Gallagher*, 408 Mass. 510, 521 (1990); *Commonwealth* v. *Libby*, 405 Mass. 231, 236-237 (1989). Having reviewed the record

---

[6]The defendant also argues that the judge erred in failing to instruct on the Commonwealth's burden in cases involving provocation. This argument is mooted by our holding that the defendant failed to introduce evidence of reasonable provocation in this case.

thoroughly, we find no reason to reduce the verdict or to order a new trial.

*Judgment affirmed.*