COMMONWEALTH *vs.* KEVIN PIERCE.

Essex. September 8, 1994. - November 21, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Capital case. *Malice. Intent. Intoxication. Evidence,* Prior inconsistent statement.

At a murder trial, the judge correctly refused to instruct the jury on the lesser included offense of voluntary manslaughter where there was insufficient evidence to support a finding of reasonable provocation. [31-32]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the judge's failure to instruct the jury on the lesser included offense of involuntary manslaughter where the evidence did not support a finding of manslaughter. [32-34]

A criminal defendant charged with murder was not entitled to a manslaughter instruction on the theory of nonfelony battery resulting in death, where the evidence demonstrated that the defendant, as a joint venturer, was responsible for the felony of stabbing the victim with two knives resulting in wounds that were sufficient to cause death. [34-35]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the judge's instructions on the second prong of malice aforethought which adequately informed the jury as to the severity of the intended harm. [35-36]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the judge's instructions on the third prong of malice aforethought, where there was extensive evidence that the defendant knew what had occurred at the time of the killing and where his defense was not that he did not know what he was doing, but rather that he was not present and did not participate in the killing. [36-37]

At the trial of a murder indictment, the judge's instruction on malice could not reasonably have been understood as relieving the Commonwealth of its burden of proof on that element, reading the charge as a whole, and no substantial likelihood of a miscarriage of justice resulted therefrom. [37-38]

At a murder trial, the absence of an instruction on the jury's appropriate consideration of the effect of the defendant's intoxication on the issue of malice did not create a substantial likelihood of a miscarriage of justice where the thrust of the defense was that someone other than the de-

fendant committed the murder and where the evidence overwhelmingly supported a finding of malice. [38-39]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the judge's failure to give a limiting instruction on the use of prior inconsistent statements of a defense witness, where those statements were cumulative of other evidence before the jury, where the judge in effect did correctly instruct on the issue in response to a question from the jury, and where the evidence against the defendant, including his confession and admission, was formidable. [39-41]

INDICTMENT found and returned in the Superior Court Department on October 19, 1988.

The case was tried before *John T. Ronan*, J.

*James M. Smith* for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. A jury convicted the defendant of murder in the first degree by joint venture based on the theories of deliberate premeditation and extreme atrocity or cruelty.[1] On appeal the defendant challenges (1) the judge's failure to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter; (2) the judge's instructions regarding the second and third prong of "malice aforethought"; and (3) the judge's explanation as to the admissibility of a witness's prior inconsistent statement. The defendant also claims that we should exercise our power under G. L. c. 278, § 33E (1992 ed.). We affirm the conviction and conclude that there is no reason to exercise our power under G. L. c. 278, § 33E.

The jury could have found the following facts. On September 28, 1988, the defendant met two of his friends, Joshua Halbert and John Nichypor, and told them that he knew of a place where they could "go party." The defendant called the victim, David McLane, whom he had known for approximately six months. The victim picked the three men up and

[1]At separate trials, Joshua Halbert and John Nichypor were likewise convicted. *Commonwealth* v. *Halbert*, 410 Mass. 534, 536 n.6 (1991). Commonwealth *vs.* John Nichypor, *post* 209 (1994).

brought them back to his Gloucester apartment where they began to drink beer, whiskey, and rum, and to watch pornographic films. Later that evening Halbert and Nichypor left to buy cigarettes at a local bar. While the two men were gone, the victim grabbed the defendant's testicles and said, "You know you want it."[2] The defendant pushed the victim away and "threw a few kicks." Once Nichypor and Halbert returned, the attack on the victim began. As the victim sat on the couch watching the television, the defendant came up from behind the victim and began to choke him. Meanwhile, Halbert and Nichypor hit the victim with a whiskey bottle, slit his throat, and stuck two knives in the victim's head. When the victim began to moan, the defendant grabbed the victim and said, "God forgive you for all your sins." At that point, the defendant kicked the victim in the head. The defendant then knelt in the victim's blood and began to pray.

Before fleeing the apartment, Halbert grabbed a sheet of uncut one dollar bills. The defendant took a wooden box containing a coin collection and then "cleaned up" the apartment so as to leave no fingerprints behind. The three men fled the apartment, attempted to steal the victim's automobile, but when it failed to start, the three men took off on foot.[3]

---

[2] The defendant testified at trial that during their friendship, the victim had made several homosexual advances. The defendant also testified that he was not bothered by the victim's advances and continued to see the victim.

[3] There was conflicting evidence as to who was present during the time of the killing. At trial the defendant testified that he remembered hallucinating and could not recall anything that occurred that evening. The defendant claimed that his confession was the product of police coercion.

Halbert, on the other hand, claimed sole responsibility for the crime. He testified at trial that on returning with Nichypor from buying cigarettes, he looked in the apartment window and saw the victim's hand on the defendant's penis. Halbert banged on the door and was greeted by the victim and the defendant. The defendant then left the apartment and Nichypor followed.

Halbert further testified that after his two friends had left, he began to choke the victim. Once the victim passed out, he hit the victim with a Southern Comfort bottle, slit the victim's throat, and stuck two knives in the victim's head. Halbert then wiped down the apartment for fingerprints,

1. *Voluntary manslaughter instruction.* The defendant's first contention is that the judge erred in refusing to instruct the jury on the lesser included offense of voluntary manslaughter because there was evidence of sufficient provocation. We disagree.

"Instructions on voluntary manslaughter must be given if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool." *Commonwealth* v. *Halbert*, 410 Mass. 534, 538 (1991), quoting *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180 (1981), *S.C.*, 390 Mass. 722 (1984). A jury must be able to infer that a reasonable person would have become sufficiently provoked, and that the defendant was in fact provoked. *Commonwealth* v. *Garabedian*, 399 Mass. 304, 313 (1987). Physical contact between a defendant and a victim is not always sufficient to warrant a manslaughter instruction even when contact was initiated by the victim. *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980). In determining whether such an instruction is warranted, we view the evidence in the light most favorable to the defendant.

The defendant argues that the victim's homosexual advance, which consisted of grabbing the defendant's testicles and stating, "You know you want it," would have been likely "to produce in an ordinary person such a state of passion,

---

grabbed the sheet of one dollar bills and the coin collection, and fled. Halbert also testified that he alone tried to steal the automobile, but when the automobile would not start he left on foot, meeting the other two men by the railroad tracks.

Halbert's trial testimony was undercut by a previous confession made to police where he implicated the defendant. In Halbert's original confession he admitted slitting the victim's throat, but claimed that the defendant choked the victim and stuck the two knives in the victim's head. When confronted with the prior inconsistent statement at trial, Halbert testified that the confession was untrue with respect to the defendant. He claimed he implicated the defendant only because he knew that the defendant had a history of mental problems and was not likely to get a heavy sentence. There was also evidence at trial that Halbert was pressured by the defendant to change his story.

anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint." *Commonwealth v. Walden, supra* at 728. This court considered the issue in *Commonwealth* v. *Halbert, supra* at 539.[4] In that case we were asked whether a "nonthreatening physical gesture and verbal invitation" would have provoked a reasonable person into a homicidal rage. *Id.* In *Halbert,* the victim put his hand on Halbert's knee and asked, "[W]hat do you want to do?" *Id.* at 535. Because the victim's actions were neither hostile nor insulting, we held that there was insufficient evidence to support a finding of provocation. *Id.* See *Commonwealth* v. *Troila,* 410 Mass. 203, 207 (1991) (no instruction on voluntary manslaughter required where only evidence of provocation was a homosexual advance made by victim).

In the present case, the victim's invitation, "You know you want it," and the grabbing of the defendant's testicles, was not provocation warranting a voluntary manslaughter instruction. Although the gesture was perhaps offensive, it was not the type of behavior that would provoke a reasonable person into a homicidal response.[5] Because the evidence was insufficient to support a finding of reasonable provocation, the judge properly refused to instruct the jury on voluntary manslaughter.[6]

2. *Involuntary manslaughter instruction.* The defendant also contends that the judge erred in failing to instruct the jury on the lesser included offense of involuntary manslaughter. Because defense counsel failed to request the instruction

---

[4]*Commonwealth* v. *Halbert,* 410 Mass. 534, 535 (1991), concerned Joshua Halbert's involvement in the murder of David McLane, the victim in the present case. See note 1, *supra.*

[5]There was also some question whether the defendant in this case was actually provoked. The defendant testified at trial that the victim had previously made several homosexual advances during their friendship, and that the defendant had not been bothered by the advances. See *Commonwealth* v. *Garabedian,* 399 Mass. 304, 313-314 (1987).

[6]The defendant also claims error in that the judge failed to instruct on the Commonwealth's burden in cases involving provocation. Because we hold that no reasonable provocation existed, the issue of the Commonwealth's burden of proving provocation is moot.

at trial, we limit our review to whether there was a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Brown*, 392 Mass. 632, 642 (1984). *Commonwealth* v. *Parham*, 390 Mass. 833, 841 (1984).

There are two aspects of involuntary manslaughter. *Commonwealth* v. *Sneed*, 413 Mass. 387, 393 n.4 (1992). One aspect involves wanton and reckless conduct causing death. *Id.* The other concerns an unintentional killing resulting from a battery not amounting to a felony which the defendant knew or should have known endangered human life. *Commonwealth* v. *Fitzmeyer*, 414 Mass. 540, 547 (1993). An instruction on involuntary manslaughter is required where any view of the evidence will permit a finding of manslaughter and not murder. *Commonwealth* v. *Sires*, 413 Mass. 292, 301 (1992). When it is obvious, however, that the risk of physical harm to the victim created a plain and strong likelihood that death will follow, an instruction on involuntary manslaughter is not required. *Commonwealth* v. *Fitzmeyer*, *supra* at 547.

A jury instruction on involuntary manslaughter was not required in this case. The medical examiner testified that the victim had been choked severely enough to cause pinpoint hemorrhages in the area of the eyelid. The victim's throat had been slashed three times. Two knives protruded from the victim's left temple. One knife had been imbedded so deeply that only its handle was exposed. The second knife passed through the victim's nasal sinuses and protruded from the right side of the victim's neck. The examiner further testified that any one of these injuries was sufficient to cause death. Given the brutality and force of these injuries, the physical harm to the victim was so great that it created a strong likelihood that death would follow. Thus, no instruction on involuntary manslaughter was required. See *Commonwealth* v. *Dunton*, 397 Mass. 101, 103 (1986) (where victim died as a result of her head being smashed into a concrete floor five or six times with such force that her brain dislodged, no error in refusing to instruct on involuntary manslaughter).

The defendant argues, however, that an involuntary manslaughter instruction was warranted because, given the defendant's state of intoxication, he did not possess "knowledge" that his actions created a plain and strong likelihood of death. We have held, however, that "[a] killing without malice does not automatically become involuntary manslaughter." *Commonwealth v. Sires, supra* at 302. "The traditional elements of involuntary manslaughter must be shown by evidence that the jury might believe before such an instruction is required." *Id.* at 302-303.

No evidence was offered at trial that the wounds inflicted were unintentional. The defense in this case was basically one of alibi. Although evidence of alibi does not relieve a judge from instructing on involuntary manslaughter, it would be error to give an involuntary manslaughter instruction without some supporting evidence of the crime. *Commonwealth v. Walden, supra* at 726-727, and cases cited.

The defendant testified at trial that he could not recall the events of the evening because he had ingested LSD and consumed alcohol. The defense then called Halbert who testified that the defendant left the apartment and was not present during the time of the killing. This version of the facts, if the jury believed it, would have resulted in an acquittal. However, this testimony, without more is insufficient to raise the issue of involuntary manslaughter. See *Commonwealth v. Sama*, 411 Mass. 293, 299 (1991) (defendant admitted killing victim, but "presented credible evidence of debilitating intoxication bearing on his ability to possess meaningful knowledge of the circumstances at the time of the victim's death").

The defendant further argues that the evidence supported a nonfelony battery manslaughter instruction. In order to devise a view of the evidence that supports this theory, the defendant relies on his confession. The defendant contends that, because choking is a battery not amounting to a felony, an involuntary manslaughter instruction was appropriate.

Nonfelony battery manslaughter was not available to the defendant because under a joint venture theory, the defend-

ant was also responsible for assault and battery by means of a dangerous weapon. Under a joint venture theory, a defendant may be accountable for the actions of the principal if the defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit a crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary. *Commonwealth v. Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). The defendant confessed to choking the victim while Halbert and Nichypor hit the victim with a bottle and stabbed the victim with two knives. Furthermore, after the victim lay moaning, the defendant kicked him in the head. The defendant, as a joint venturer, was responsible not only for his own actions, but also for those of Halbert and Nichypor. Because stabbing the victim with a knife constitutes assault and battery by means of a dangerous weapon, a felony, an instruction on nonfelony battery manslaughter was not available to the defendant. G. L. c. 265, §§ 15A and 15B (1992 ed.).[7]

3. *Malice aforethought instruction.* The defendant challenges several aspects of the judge's instruction on malice aforethought.[8] Given that there were no objections at trial, we consider the arguments, pursuant to G. L. c. 278, § 33E, to ascertain whether there was a substantial likelihood of a miscarriage of justice. *Commonwealth v. Brown*, 392 Mass. 632, 642 (1984).

The defendant first claims that the judge's instruction as to the second prong of malice was deficient. With respect to the second prong of malice, the judge instructed the jury:

---

[7]Although the judge instructed on assault and battery as a joint venture, such an instruction was not warranted. See *Commonwealth v. Curry*, 368 Mass. 195, 202 (1975); *Commonwealth v. Myers*, 356 Mass. 343, 350 (1969).

[8]The crime of murder requires proof of a killing done with malice aforethought. Malice aforethought includes (1) any unexcused intent to kill (first prong); (2) any unexcused intent to do grievous bodily harm (second prong); or (3) to do an act which, in the circumstances known to the defendant, a reasonably prudent person would have known there was a plain and strong likelihood that death would follow (third prong). See *Commonwealth v. Sneed*, 413 Mass. 387, 388 n.1 (1992).

"If a man intentionally and without legal justification . . . used upon a person, upon the body of another, a force sufficient as, for example, a bullet from a revolver, or a dagger, a force that as used would probably do grievous harm to that other . . . that act is malicious within the meaning of the word . . . ."

We hold that the instruction did not create a substantial likelihood of a miscarriage of justice. Our recent cases have made clear that the intended harm for the second prong of malice must be grievous bodily harm. *Commonwealth* v. *Sneed, supra* at 391-392, and cases cited. We believe the judge's instructions adequately informed the jury as to the severity of the intended harm.[9]

The defendant further claims that the judge's instructions failed to satisfy either the subjective or objective component of the third prong of malice. The third prong of malice has both a subjective and objective component. "When deliberating as to whether the Commonwealth has proved the knowledge aspect of malice aforethought under the third prong, a jury should consider: (1) the nature and extent of the defend-

---

[9]The Commonwealth points out several inconsistencies in the judge's malice charge. After defining the three prongs of malice, the judge further explained that "malice as used doesn't necessarily imply hatred . . . [b]ut it does include *all intention to inflict injury* . . ." (emphasis added). The judge went on to charge that "if this malicious . . . *intent to do injury* precedes the act by which the *injury* is done, then that is malice aforethought" (emphasis added). Although the defendant has not raised the issue on appeal, according to our duty under G. L. c. 278, § 33E, we review to determine whether there was a substantial likelihood of a miscarriage of justice.

We conclude that any inconsistencies in the judge's instruction as to the severity of the intended harm did not create a substantial likelihood of a miscarriage of justice. In cases "where deaths were caused by gunshot or by some other dangerous instrument and there was no appellate issue concerning the severity of any intended bodily harm, the court has used a summary definition of the second prong of malice that does not refer to the grievousness of the intended bodily injury." *Commonwealth* v. *Sneed, supra* at 392. Because there was no issue here concerning the severity of the intended bodily harm, any inconsistencies in the judge's instruction did not result in a substantial likelihood of a miscarriage of justice.

ant's knowledge of the circumstances at the time he acted; (2) whether, in the circumstances known by the defendant, a reasonably prudent person would have recognized that the defendant's conduct would create a plain and strong likelihood of death or injury." *Commonwealth* v. *Sama*, 411 Mass. 293, 298 (1991).

As to the third prong of malice, the judge's instructions were as follows:

> "If a man intentionally . . . used upon a person . . . a force that as used would . . . create a plain and strong likelihood that the other would die as a result . . . that act is malicious within the meaning of the word . . . ."

Although we think this language is most unsatisfactory, we nevertheless conclude that the instruction as given did not create a substantial likelihood of a miscarriage of justice. There was substantial evidence that the defendant in fact knew exactly what had occurred the night of the killing. In the defendant's confession to the police two days after the murder he described in detail how he had choked the victim while the others beat and stabbed him. A week after his arrest, the defendant admitted to his cousin that he had slit the victim's throat and that he had tried to clean up as best he could. The defendant also told a friend how he had kicked the victim. Furthermore, the defense theory at trial was not that the defendant did not know what he was doing at the time of the murder, but that he was not present and did not participate in the killing. Because there was extensive evidence of the defendant's knowledge of the circumstances at the time of the killing, and because of the defense theory at trial, we conclude that the instruction as given did not create a substantial likelihood of a miscarriage of justice.

The defendant's final assertion is that the malice instruction had the effect of imposing a mandatory presumption of malice arising from the use of a deadly weapon or from a

deliberate or cruel act.[10] See *Commonwealth* v. *Callahan*, 380 Mass. 821, 823 (1980). Reading the charge as a whole, we conclude that the malice instruction could not have reasonably been understood as relieving the Commonwealth of its burden of proof on the element of malice. First, the judge's instruction that "[m]alice *may be . . . implied* by jurors in every deliberate or cruel act to another" was not cast in the type of mandatory terms found objectionable in other cases. See *id.* at 823-825. Second, because malice may be inferred from the intentional use of a deadly weapon, *Commonwealth* v. *Campbell*, 375 Mass. 308, 312 (1978), and cases cited, the judge's reference to the use of such a weapon did not have the effect of imposing a mandatory presumption of malice. Finally, the judge clearly instructed the jury on the Commonwealth's burden to prove every element of the crime. *Commonwealth* v. *Medina*, 380 Mass. 565, 578 (1980). For these reasons, we conclude that there was no substantial likelihood of a miscarriage of justice.

4. *Intoxication instruction.* The defendant also asserts that the omission of an intoxication instruction as it related to a finding of malice created a substantial likelihood of a miscarriage of justice. We disagree.

The judge instructed the jury that they could consider the defendant's intoxication when determining whether the defendant had the specific intent required for murder in the first degree committed with deliberate premeditation or with extreme atrocity or cruelty. No instruction was given, however, as to the effect of the defendant's intoxication on the issue of malice. In *Commonwealth* v. *Sama*, 411 Mass. 293, 298 (1991), we held that it was error not to instruct the jury, on request, as to the relevance of the defendant's intoxication

---

[10]The defendant challenges the following instructions: "If a man intentionally and without legal justification . . . used upon a person, upon the body of another, a force sufficient as, for example, a bullet from a revolver, or a dagger, a force that as used would probably do grievous harm to that other . . . that act is malicious within the meaning of the word . . . . Malice may be, depending on the circumstances, implied by jurors in every deliberate or cruel act to another . . . ."

on the issue of malice. The error would not require reversal, however, "if there was no evidence that the defendant did not know what he was doing at the time of the killing." *Commonwealth* v. *Sires, supra* at 299. Given that the defendant neither requested nor objected to the absence of such an instruction, we limit our review to whether the omission created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Brown, supra.*

We conclude that the absence of an instruction on the jury's appropriate consideration of the effect of the defendant's intoxication on the issue of malice did not create a substantial likelihood of a miscarriage of justice. The thrust of the defense in this case was that someone other than the defendant committed the murder, and that the defendant was not present at the time. Evidence of the defendant's intoxication was not offered to show that the defendant did not have the intent to choke, beat, and stab the victim. Rather it was offered to explain why the defendant had no memory of the events and to suggest that the defendant's confession to the police was the result of coercion. Thus, the jury were not asked to decide whether the defendant knew what he was doing at the time of the killing, but to decide whether the defendant had in fact participated in the attack. Since the defense rested on the premise that the defendant was not present at the time of the murder, and since the evidence overwhelmingly supported a finding of malice, there was no substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Sires, supra* at 300 (where no jury issue existed concerning effects of alcohol on what the defendant knew at time of killing, omission of intoxication instruction as it related to malice not prejudicial); *Commonwealth* v. *Lawrence*, 404 Mass. 378, 395 (1989) (no error due to failure to instruct on intoxication where defense was not one of intoxication but that defendant had nothing to do with the killing).

5. *Instructions relating to prior inconsistent statements.* At trial, Joshua Halbert claimed sole responsibility for the victim's death. This testimony was significantly undercut,

however, by the testimony of several of the Commonwealth's rebuttal witnesses. Dr. Helene Presskreischer, the supervising psychologist and forensic evaluator at Bridgewater State Hospital, testified without objection that Halbert told her that he had felt "pressure" from the defendant to take full responsibility for the killing. Halbert's mother testified that her son told her that he had killed the victim and also that the defendant had stabbed the victim in the head. She also testified that Halbert told her that he had changed his version of the murder in order to avoid what happens to "rats in prison."[11] Although this testimony was offered solely for impeachment purposes, a limiting instruction regarding the appropriate use of the prior inconsistent statements was neither requested by the defendant nor given by the judge at the time the prior inconsistent statements were introduced.[12] The defendant contends that the judge's failure to give a limiting instruction regarding the proper use of prior inconsistent statements created a substantial likelihood of a miscarriage of justice. We disagree.

In response to a question from the jury, the judge gave an instruction which in effect limited the jury's consideration of the prior inconsistent statements.[13] The judge explained that a prior inconsistent statement is permitted "only because it is inconsistent and therefore affects credibility." He also instructed that prior inconsistent statements may be "weigh[ed]" in "assessing the credibility" given to Halbert. In addition, Halbert's prior inconsistent statements were merely cumulative of other evidence already before the jury. See *Commonwealth* v. *Costa*, 354 Mass. 757 (1968). The de-

---

[11]The Commonwealth also called Halbert's aunt who testified that Halbert told his mother that the defendant put a knife into the victim's head.

[12]We note that the prosecutor did not argue in his closing that the prior inconsistent statements were substantive evidence of the defendant's guilt, only that the statements should be weighed in assessing the credibility of Halbert's testimony. See *Commonwealth* v. *Rosa*, 412 Mass. 147, 159-160 (1992) (reversing conviction where prosecutor argued as though prior inconsistent statements were substantive evidence).

[13]There is no issue as to prior consistent statements.

fendant's confession to the police, the defendant's admission to his cousin, and the circumstantial evidence all created a formidable case against the defendant. For these reasons, the judge's failure to give a limiting instruction regarding the testimony of the Commonwealth's rebuttal witnesses did not create a substantial likelihood of a miscarriage of justice.

6. *Section 33E.* The defendant was convicted of murder in the first degree on the basis of both deliberately premeditated malice aforethought and extreme atrocity or cruelty. Because the evidence in this case warranted those conclusions, we decline to exercise our power under G. L. c. 278, § 33E. The interests of justice do not require either a new trial or the entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*