The defendant, Brian MacDonald, was convicted by a jury in the Superior Court of voluntary manslaughter arising out of the stabbing of Anthony Spaulding.[2] The killing occurred outside of Spaulding's home in the early morning hours of January 1, 2013, while a New Year's Eve party was in full swing. There is no dispute that the defendant stabbed Spaulding five times in the torso causing his death. At trial, the defendant claimed that he acted in self-defense, testifying that he stabbed Spaulding because he feared for his life when Spaulding and his friends attacked him as he was leaving the party. On appeal, the defendant contends that the jury instruction on self-defense was erroneous and created a substantial risk of a miscarriage of justice. He also contends that the judge erred in denying his request for an instruction on involuntary manslaughter. We affirm.
Background. The facts surrounding Spaulding's death may be summarized as follows. In the early morning of January 1, 2013, the defendant went to a New Year's Eve party with his girl friend and another couple at Spaulding's home, which was located on Pratt Street in Brighton. Spaulding shared the home with five friends, all of whom were present at the time of the altercation which led to Spaulding's death. The defendant did not know Spaulding or his roommates; he learned of the party through an acquaintance of his girl friend. The defendant arrived at the party around 2:00 A . M . By that time, Spaulding and his girl friend had retired to Spaulding's bedroom on the second floor. The defendant and his friends went to the second floor to use the bathroom and woke Spaulding when they opened a bottle of champagne. Spaulding came out of his bedroom, and a heated exchange ensued. The argument escalated when Spaulding pushed the defendant's girl friend. The defendant then punched Spaulding in the face, and the two toppled down the stairs. The fighting continued until someone pulled Spaulding away from the defendant, after which the defendant left the house.
The witnesses provided conflicting testimony regarding what happened next. Although there is no dispute that Spaulding came out of the house and the fighting between him and the defendant resumed, the jury heard different descriptions of the fight. For purposes of our discussion, we summarize the defendant's version of events. He testified that he ran out the front door once he was separated from Spaulding but did not leave because his girl friend was still inside and he wanted to retrieve his backpack. Within moments of the defendant's departure, Spaulding came out of the house and tackled the defendant. Four or five other people joined the fight. The defendant heard a bottle break near his head and "panicked." Unable to free himself from Spaulding, who was on top of him and punching him, the defendant took a knife from his belt and began to swing it at Spaulding. When Spaulding failed to stop fighting, the defendant changed positions and stabbed Spaulding in the side and back. Spaulding was gravely injured and lost consciousness. He died shortly thereafter. Meanwhile, the defendant and his girl friend walked home. The defendant was bleeding from a cut on his hand, but did not seek medical attention. The police eventually followed a trail of blood to the defendant's apartment. The defendant and his girl friend had placed their clothes in plastic bags, which the police seized. When the police learned that Spaulding had died, they arrested the defendant.
Discussion. 1. The self-defense instruction. The defendant did not object to the self-defense instruction, and, in fact, requested it. Under these circumstances, we review under the standard of a substantial risk of a miscarriage of justice. Commonwealth v. Resende, 476 Mass. 141, 153 (2017). The defendant challenges the following instruction: "The right of self-defense cannot be claimed by a defendant who is the first to use or threaten to use deadly force because the defendant must have used or attempted to use all proper and reasonable means under the circumstances to avoid physical combat before resorting to the use of deadly force."[3] The defendant argues that, in the circumstances of this case, a "duty to retreat" instruction should not have been given because there was no evidence that he was the initial aggressor during the fatal altercation. This error, he claims, was exacerbated by the judge's failure to adequately explain (1) the term "deadly force," and (2) what constitutes an announcement of intent to withdraw from the conflict without the use of force.
We discern no error in the instruction. As the defendant acknowledges, the instruction tracked the Supreme Judicial Court's revision of the Model Jury Instructions on Homicide 28-29 & n.68 (2013) almost verbatim. In Commonwealth v. Chambers, 465 Mass. 520, 528 (2013), the Supreme Judicial Court explained that it revised the model instruction on self-defense in order to "address[ ] the potential overbreadth of [their] earlier definitions of 'first aggressor' and clarif[y] that, in the context of homicide, a defendant may lose the right to claim self-defense only if he 'was the first to use or threaten deadly force.' " Ibid., quoting from Model Jury Instruction on Homicide 28-29. "The definition of 'first aggressor' [therefore] pertains not only to 'the person who initiated the confrontation, but also the person who initiated the use or threat of deadly force[.]' " Commonwealth v. Vargas, 475 Mass. 338, 346 (2016), quoting from Commonwealth v. Camacho, 472 Mass. 587, 592 (2015). The judge's instruction was legally correct and appropriate where, as here, the question as to who was the first to use or threaten deadly force was a contested issue. Consequently, there was no error, let alone a substantial risk of a miscarriage of justice.
We also reject the defendant's claim that the judge's instructions regarding the meaning of deadly force and the obligation to announce an intention to withdraw from the conflict were flawed. The judge correctly defined deadly force as "force that is intended or likely to cause serious injury or death." See Commonwealth v. Cataldo, 423 Mass. 318, 321 (1996) ; Commonwealth v. Noble, 429 Mass. 44, 46 (1999). As the Commonwealth observes in its brief, no reasonable juror who credited the defendant's testimony regarding the actions of Spaulding and his friends could have doubted that the defendant faced deadly force.
Similarly, there is no merit to the defendant's claim that the judge failed to adequately explain the obligation to announce an intent to withdraw, if only because there was no evidence from which a reasonable juror could infer that the defendant withdrew from the deadly altercation or intended to withdraw and end the confrontation without any additional use of force.
2. Involuntary manslaughter. The defendant's next argument, that the judge erred by not giving his requested instruction on involuntary manslaughter, is similarly unavailing.[4] Involuntary manslaughter is "an unintentional killing resulting from 'wanton and reckless conduct ... [or] ... a battery not amounting to a felony which the defendant knew or should have known endangered human life.' " Commonwealth v. Tague, 434 Mass. 510, 518 (2001), quoting from Commonwealth v. Pierce, 419 Mass. 28, 33 (1994). An instruction on involuntary manslaughter is required where "any view of the evidence will permit a finding of manslaughter and not murder," but not when it is "obvious ... that the risk of physical harm to the victim created a plain and strong likelihood that death will follow." Commonwealth v. Pierce, supra.
Here, the defendant testified that he was "freaked out" and "afraid of really getting hurt" during the altercation, and therefore he "took out [his] knife that [he] already had opened in [his] belt loop" and "just started swinging it up" at Spaulding's chest and torso. Spaulding sustained multiple stab wounds which pierced his heart and liver. Viewing this evidence in the light most favorable to the defendant, the defendant was not entitled to an instruction on involuntary manslaughter. See, e.g., Commonwealth v. Burgess, 450 Mass. 422, 439 (2008) ("The defendant stabbed the victim twice with a knife. These injuries to the victim's chest and abdomen were deep and fatal, creating 'a plain and strong likelihood that death would follow ...' ").
Judgment affirmed.

The defendant was charged with murder in the second degree.

More particularly, the judge instructed the jury that the Commonwealth may disprove self-defense by proving: "that the defendant was the first to use or threaten to use deadly force and that he did not withdraw, in good faith, from the conflict and announce to the person or persons he provoked, his intention to withdraw and end the confrontation without any additional use of force. The right of self-defense cannot be claimed by a defendant who is the first to use or threaten to use deadly force because the defendant must have used or attempted to use all proper and reasonable means under the circumstances to avoid physical combat before resorting to the use of deadly force. A defendant who provokes or initiates such a confrontation must withdraw in good faith from the conflict and announce to the person or persons he provoked his intent to withdraw and end the confrontation without the use of force or additional force."

Because the defendant requested an instruction on involuntary manslaughter and the judge declined to give it, we review under the standard of prejudicial error. See, e.g., Commonwealth v. Walker, 466 Mass. 268, 283-284 (2013).